UNITED STATES, Appellee

v

ROBERT CLEVELAND, Private, U. S. Army, Appellant

15 USCMA 213, 35 CMR 185

No. 17,875

February 5, 1965

*Captain Thomas E. Towe* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Major George O. Taylor, Jr.*

*Captain John C. Cortesio, Jr.*, argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Schuck, Lieutenant Colonel Francis M. Cooper,* and *Captain Charles M. Pallesen, Jr.*

## Opinion of the Court

KILDAY, Judge:

Charged with larceny, sodomy, and false swearing, in violation of Articles 121, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 921, 925, and 934, respectively, accused pleaded not guilty. A general court-martial, however, convicted him as charged, and sentenced accused to a dishonorable discharge, total forfeitures, and confinement at hard labor for two years. The convening authority reduced the period of incarceration to eighteen months, but otherwise approved the findings and punishment. Thereafter, a board of review in the office of The Judge Advocate General of the Army affirmed the findings and so much of the sentence as extends to bad-conduct discharge, total forfeitures, and confinement for one year. We granted accused's petition for review in order to consider two issues, both of which relate to the challenge for cause of three officers appointed as court members.

The situation with which we are concerned arose during the *voir dire* proceedings, prior to accused's arraignment. Accordingly, a recitation of the facts of the offenses is unnecessary, except that we note the charge of sodomy was allegedly committed by accused with a prostitute. Specifically, the

questions before us arise from defense counsel's examination of three court members—the president, a lieutenant colonel, and a captain—regarding that offense.

Initially, defense counsel inquired of the lieutenant colonel whether he believed that a conviction of heterosexual sodomy with a prostitute "would necessarily require a discharge or that you vote for a discharge." That officer responded in the affirmative and the defense thereupon interposed a challenge for cause. Further questions were asked of the officer by trial counsel, apparently in an effort to rehabilitate him, but the court member adhered to his position that a discharge was, in his mind, required for a conviction of such an offense. Thereupon, the law officer advised the court members that he joined in the challenge for cause, and submitted the same to the court for determination. The challenge was not sustained.

Next, the defense directed questions to the senior court member along substantially the same lines. While his position was not quite so firm as that of the member previously discussed, the president disclosed his strong feelings on heterosexual sodomy, "especially in

the Army." He further indicated he felt the retention on duty of a person so convicted was inconsistent with his duty as an officer.

Generally, the attitude of the third member with whom we are concerned, was similar. When asked whether he felt "that failing to vote for a discharge for such a person would be inconsistent with your concept of your duty as an officer," the captain answered "Yes."

Challenges for cause against the president and the captain were rejected by the court members. The defense then struck the captain from the court by peremptory challenge. Thereafter, trial counsel apparently had second thoughts about his opposition to the challenge for cause against the lieutenant colonel. With the permission of the law officer, the prosecution was permitted to remove that officer from membership on the court-martial by peremptorily challenging him.

Thus, of the three members as to whom challenges for cause were directed but rejected, two were removed and only the president continued to sit on the court-martial.

I

In the first assignment of error upon which we granted review, it is asserted that accused was materially prejudiced by the court-martial's refusal to sustain the challenges against the three members.

On prior occasions when discussing the subject of challenges for cause, this Court has stated its belief that it would be preferable for the same to be passed upon by the law officer of a general court rather than the court members. United States v Adamiak, 4 USCMA 412, 15 CMR 412; United States v Dean, 5 USCMA 44, 17 CMR 44; United States v Talbott, 12 USCMA 446, 31 CMR 32. Indeed, we have recommended enactment of legislation to that effect. Annual Report of the United States Court of Military Appeals and The Judge Advocates General of the Armed Forces and the General Counsel of the Department of the Treasury, 1960, page 11. Considering the facts of the present case, we strongly reaffirm that recommendation.

Nonetheless, we recognize that we are powerless ourselves to alter the present procedure. Numerous prior decisions in this area make certain principles clear. There can be no doubt under the Code and the Manual that, in military law, challenges for cause must be resolved by the court itself, voting in secret session with the challenged member excluded. Moreover, this is so notwithstanding that such process results —as it did in fact in the case at bar— in the somewhat anomalous situation whereby court members challenged on substantially the same ground are permitted to ballot on the challenges against their fellow members, even though disqualified to vote on their own. See Articles 41, 51, and 52, Uniform Code of Military Justice, 10 USC §§ 841, 851, and 852; Manual for Courts-Martial, United States, 1951, paragraph 62; United States v Shaffer, 2 USCMA 75, 6 CMR 75; United States v Stewart, 2 USCMA 78, 6 CMR 78; United States v Adamiak, supra; United States v Dean, supra; United States v Carver, 6 USCMA 258, 19 CMR 384; United States v Smith, 6 USCMA 521, 20 CMR 237; United States v Jones, 7 USCMA 283, 22 CMR 73; United States v Talbott, supra. Accordingly, the scope of our inquiry is whether the court-martial —the body having authority to rule on the challenges for cause—abused its discretion and thus erred in voting not to sustain the same. United States v Dean, supra; United States v Carver, supra; United States v Sears, 6 USCMA 661, 20 CMR 377; United States v Talbott, supra.

As was noted in the *Dean* case, a general or abstract bias against particular classes of offenses or persons is not necessarily disqualifying. See United States v Noelke, 1 Fed 426 (SD NY) (1880); Temple v Moses, 175 Va 320, 8 SE2d 262 (1940). However, "Fairness and impartiality on the part of the triers of fact constitute a cornerstone of American justice," and the true test is whether transient and abstract bias or impressions "will easily yield to the

evidence presented in open court and to the law propounded by the trial judge. *Reynolds v United States*, 98 US 145, 25 L ed 244." *United States v Dein*, supra, 5 USCMA at page 49. Of similar import is the following statement from *United States v Parker*, 6 USCMA 274, 284–85, 19 CMR 400:

". . . [I]t constitutes no disqualification that . . . [a court member] is opposed to some crimes more than others. The degree of such a distaste is not, in itself, a test of the member's qualifications, and he is not disqualified because he abhors the particular crime charged more than others. *State v Marcus*, 240 Iowa 116, 34 NW2d 179 (1948); *Shank v State*, 189 Ark 243, 72 SW2d 519 (1934); *Dies v State*, 56 Tex Crim 32, 117 SW 979 (1909). The real test is whether he is mentally free to render an impartial finding and sentence based on the law and the evidence."

See also *United States v Carver*, supra, 6 USCMA at page 264.

Moreover, additional firmly established standards have been announced as to the obligations of members of courts-martial. Thus, as this Court held in *United States v Sears*, supra, 6 USCMA at page 665:

"It is the settled law of this Court that a court member's duties are (1) to try the case before him and (2) to assess an appropriate sentence, if guilt is determined thereby. If he foregoes these functions for those of an advocate or partisan, he is no longer competent to serve. *United States v Carver*, 6 USCMA 258, 19 CMR 384; *United States v Smith*, 6 USCMA 521, 20 CMR 237."

And a unanimous Court reaffirmed that requirement in *United States v Wilson*, 7 USCMA 656, 23 CMR 120, there quoting from another unanimous decision in *United States v Moore*, 4 USCMA 675, 16 CMR 249, where it was stated categorically:

". . . The accused has the statutory right to have his innocence determined and his punishment imposed by a court composed entirely of members whose qualifications meet the standards of eligibility as set forth in the Code and the Manual."

Thus, it is clear beyond peradventure that the applicable criterion is the absence of bias on the part of the court members that cannot be put to one side. An accused is entitled to have members discharge their duties based on all the facts as they develop, and the law as it is announced. And it is equally certain that an accused's rights in this area extend to both findings and sentence. As Chief Judge Quinn succinctly stated in his separate opinion in the *Parker* case:

"An accused is entitled to have his sentence as well as his guilt adjudged by court members who are uninfluenced by predetermined and fixed ideas." [*United States v Parker*, supra, 6 USCMA at page 285.]

In the case at bar there can be no doubt that the questions posed by defense counsel, on *voir dire* examination of the court members, were proper inquiries into their ability to participate impartially in sentence proceedings. Indeed, the situation presented is markedly similar to that involved in *United States v Lynch*, 9 USCMA 523, 26 CMR 303. There, this Court considered a similar *voir dire* question calculated to determine whether, assuming conviction, the senior court member would feel compelled to vote for punitive separation regardless of the circumstances. In holding the law officer erred in curtailing examination of that sort, we concluded:

"The question put to the president of the court-martial by the defense, far from being hypothetical, in effect summed up the offenses of which the accused stood charged." [*United States v Lynch*, supra, 9 USCMA at page 527.]

Cf. *United States v Parker*, supra, 6 USCMA at page 283.

So, too, in the present instance, the *voir dire* questioning summed up one of the offenses of which accused stood charged. From their responses, to which we have alluded hereinbefore, it is ap-

parent the members involved harbored an inelastic attitude concerning a discharge, rendering them unable to sit impartially as to sentence. Hence, we conclude, in line with the authorities to which we have previously referred, that the court-martial abused its discretion in refusing to sustain the challenges for cause.

As we have noted earlier, two of the members involved were stricken from the court-martial by peremptory challenge. However, the president remained on the court. He presided throughout the trial and participated in both the findings and sentence. Obviously, therefore, reversal is required because of the error as to his challenge.

Left for determination is the disposition which must be ordered in light of the error. In United States v Wilson, 7 USCMA 656, 23 CMR 120, the law officer became a prosecution witness after findings had been returned, and was therefore ineligible for further participation. There, we reversed only as to sentence, as the error in the law officer's participation did not infest the proceedings *ab initio,* and related only to punishment.

The disqualification of the president in the present case likewise had to do with his ability impartially to participate in sentence proceedings. However, an important distinction from *Wilson* is apparent.

There, the law officer's ineligibility was not known when trial commenced. Indeed, as we pointed out, he was not disqualified until he became a witness for the prosecution, which did not occur until presentence proceedings were in progress. At all times until after findings had been returned, no infirmity existed and the law officer was completely competent to act in his assigned capacity.

Such a situation is in marked contrast to the present one. Here, the president's evident disqualification occurred prior to both findings and sentence. The error preceded even accused's arraignment. This difference is particularly significant in light of the obvious futility of permitting a member to preside

and participate on findings but to remove him before proceedings on sentence, when his disqualification has been known from the outset of trial. In the case at bar, the president was cloaked in his disqualification throughout his participation both on the merits and on punishment.

Accordingly, we conclude it was fatal to both findings and sentence for the disqualified senior member to continue to participate after the court improperly failed to sustain the challenge for cause leveled against him. Cf. United States v Wilson, supra. See also United States v Moore, 4 USCMA 675, 16 CMR 249, supra.

## II

The second issue upon which we granted review deals with the law officer's failure to instruct the court-martial on the legal test to be applied in deciding the challenges for cause. In view of the foregoing discussion, that question is rendered moot and it is unnecessary to resolve the same. Regardless, we desire to utilize this opportunity to comment briefly concerning the matter in the hope of lending guidance and assistance to those in the field in future cases.

The law officer here properly advised the court members on voting and procedures, and correctly instructed that challenges for cause were to be decided by them—adding the general caveat that they should pass on challenges liberally. He did not, however, go on to spell out in anywise the legal tests that should guide the court in determining whether or not good cause had been shown to sustain a challenge.

Suffice it to say that amplification and enlightenment by the law officer as to the governing factors to be applied in this area are—just as they are in others—always desirable, to assure that issues before the triers of fact may be knowledgeably and intelligently considered. See United States v Smith, 13 USCMA 471, 474, 33 CMR 3. Surely, as was pointed out long ago in United States v Jones, supra, 7 USCMA 282, at page 285, a law officer is not pre-

cluded "from instructing the court members on the law relating to challenge," and the advantage of doing so should be obvious.

As noted, we need not decide the issue here in view of the reversal we order, and content ourselves with the foregoing caveat which will, we confidently trust, serve to encourage full and enlightening instructions in this and other areas.

III

Because of the error in not sustaining the challenge for cause to the president of this court-martial, the decision of the board of review is reversed. The findings and sentence are set aside and the record is returned to The Judge Advocate General of the Army for further action.

A rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.