## UNITED STATES

v.

Private (E–1) Arthur SUMTER, 251–96–2675, U.S. Army, Company A, 1st Battalion, 2d Infantry, Fort Riley, Kansas 66442.

SPCM 10080.

U. S. Army Court of Military Review.

29 July 1975.

Appellate counsel for the Accused: CPT J. D. Miller, JAGC; CPT Sammy S. Knight, JAGC; LTC Edward S. Adamkewicz, Jr., JAGC; COL Victor A. De Fiori, JAGC.

Appellate counsel for the United States: CPT Nancy M. Giorno, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC; LTC Ronald M. Holdaway, JAGC.

## OPINION OF THE COURT

CARNE, Senior Judge:

Contrary to his pleas the appellant was convicted by a special court-martial with members of aggravated assault by cutting his victim on the arm with a straight razor, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928. The sentence, as approved by the convening authority, is to be discharged from the service with a bad-conduct discharge.

Counsel for the appellant assert that the military judge abused his discretion by granting the government's challenge for cause against Court Member Hernandez. We do not agree.

During voir dire Member Hernandez's responses to the several questions, were as follows:

TC: Private Hernandez, do you feel mature enough to assess the sentence here to include a Bad Conduct Discharge?

PFC HERNANDEZ: I couldn't tell you that right now.

TC: Do you think if the facts warranted, would you give a Bad Conduct Discharge in this case?

PFC HERNANDEZ: I don't think I would. (R. 27.)

. . . . .

MJ: Originally there was some question on whether some members of the court could impose a Bad Conduct Discharge, and there was some confusion, of course, in the way the question was asked. The question is not can you at this time say that you will impose a Bad Conduct Discharge. Not a single one of you can. You cannot say that. You cannot speculate on the sentence until you have heard the entire case. First of all, the accused has to be convicted before you can even speculate on the sentence. Second, you have to determine what is an appropriate sentence based upon all the evidence in the case, including all the evidence in extenuation and mitigation and to determine what is an appropriate sentence. Now the question is if you, after hearing all the evidence, including the evidence in extenuation and mitigation, if the accused is convicted, will you be able to impose a Bad Conduct Discharge if you feel that is appropriate for the offense the accused stands convicted of. Is there any member of the court who could not do that simply because you don't think a Bad Conduct Discharge ought to ever be imposed? Is there any member of the court who could not impose a Bad Conduct Discharge even though you felt it was an appropriate sentence?

PFC HERNANDEZ: I think I wouldn't impose a Bad Conduct Discharge from what he has done, to my point in knowledge. I don't think it would be fair.

MJ: You don't think you could impose a BCD?

PFC HERNANDEZ: I don't think I could. The evidence might be a whole different story, sir, but from what he has done, I don't think I could impose a Bad Conduct Discharge on the man, sir.

MJ: All right. (R. 55–56.)

. . . . .

TC: Sir, I still would request you move on the motion in reference to the Bad Conduct Discharge that Private Hernandez has—

MJ: The challenge against PFC Hernandez is sustained.

DC: He said he could not give him a BCD based on what is before him now, but he's not heard the evidence he said—he said the evidence might be a different story. I don't think you heard him.

MJ: I think he said, as I understood, he felt cutting a man with a straight razor would not warrant a BCD.

PFC HERNANDEZ: I don't believe it should be a BCD.

MJ: Cutting a man with a straight razor would not warrant a Bad Conduct Discharge?

PFC HERNANDEZ: The reason I said it, sir, from what I hear, he was just cut on the arm. I think if it was a worse cut on the man himself, I would think about it more, but as of now, I wouldn't impose a Bad Conduct Discharge.

MJ: You'd require him to be cut in some more violent place before you could impose a Bad Conduct Discharge.

The challenge is sustained. (R. 57–58.)

■ The rule is well-recognized that a wide discretion is vested in the trial judges for determining the member's qualifications to sit on a trial and appellate courts should reverse only when a clear abuse of discretion, prejudicial to the appellant, is shown. *United States v. Parker,* 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955). It is also well established that the test of a member's qualifications is whether he is mentally free to render an impartial finding and sentence based on the law and the evidence. *United States v. Parker, supra; United States v. Watkins,* 20 C.M.R. 750 (A.F.B.R. 1955). It has been held on numerous occasions that preconceived opinions by members that a punitive discharge must necessarily follow findings of guilty of certain offenses, regardless of the evidence, disqualifies those members from sitting on the trial. *United States v. Cleveland,* 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965); *United States v. Watkins, supra; United States v. Chavis,* 32 C.M.R. 645 (A.B.R. 1963); *United States v. Kelly,* 42 C.M.R. 817 (A.C.M.R. 1970). Since both parties to a trial are entitled to impartial members, it necessarily follows that a preconceived determination in favor of lenien-

cy for an accused is just as harmful to the judicial process as a preconceived determination in favor of the government. *United States v. Carver,* 6 U.S.C.M.A. 258, 19 C.M.R. 384 (1955); *United States v. Williams,* 11 U.S.C.M.A. 459, 29 C.M.R. 275 (1960); paragraph 62*f*(13), Manual for Courts-Martial, United States, 1969 (Revised edition). As Judge Ferguson stated in his opinion in the *Williams* case, "If the Government believed that the court members were predisposed to leniency, it was entitled to challenge them. . . ." In our opinion, the clear overall tenor of Hernandez's responses establish, as the military judge properly concluded, that this member had a predetermined aversion against the imposition of a punitive discharge. Since Court Member Hernandez was obviously biased against the government he was disqualified to serve as a member, and we find no abuse of discretion by the military judge in granting the challenge.

One other matter warrants discussion. Shortly after the defense had rested following presentation of matters in extenuation and mitigation, including an unsworn statement by the appellant, the President of the Court asked the trial judge about a discrepancy between the appellant's official military record which reflected duty only in the Continental United States (Pros. Ex. 3) and the two medals he was wearing on his uniform (Air Medal and the Bronze Star Medal). The defense counsel immediately stated that the appellant had not been awarded these medals but that the uniform supplied from his company came with the ribbons on it. Nothing further regarding this incident was stated in the record; hence, this explanation apparently satisfied the court.

■ It is the right of every accused to appear at trial properly attired in the uniform prescribed by the military judge . . . including the insignia of his rank and *any decorations, emblems or ribbons to which he is entitled.* (Emphasis supplied.) Para. 60, MCM 1969 (Rev.). *United States v. Evans,* 18 U.S.C.M.A. 3, 39 C.M.R. 3 (1968). *Also see United States v. Rowe,* 18 U.S.C.M.A. 54, 39 C.M.R. 54 (1968). If, as stated by the

defense counsel in the instant case, the uniform supplied by the unit commander is improper or contains unauthorized insignia of rank or decorations, which cannot readily be removed, we believe the appellant and his defense counsel should take immediate action to notify the military judge before the trial commences in order that an appropriate uniform may be obtained. Failure to do so would either mislead the court or if detected as in this case, could at the very least cause embarrassment to the accused and his counsel. Under the circumstances of this case, we surmise that this incident, at most, created some embarrassment for the appellant. In view of the sentence adjudged (no confinement or forfeitures) and the prior disciplinary record of the appellant including two previous convictions (one for assault) and three punishments under Article 15, UCMJ, 10 U.S.C. § 815, we find no fair risk that the discovery of the true facts in any way affected the fairness of the proceedings or constituted error prejudicial to the substantial rights of the appellant. In any event, if the fairness of the proceedings were affected, the responsibility for failure to bring this matter to the attention of proper authority rests with the defense and they should not benefit from their own failure to act.

All trial personnel are admonished to be alert concerning matters of appropriate uniform furnished the accused including insignia and decorations since it is possible that under certain circumstances the discovery of unauthorized items during the course of the trial could affect the fairness of the proceedings and lead to allegations against the parties involved, including adequacy of representation.

The findings of guilty and the sentence are affirmed.

Judge MITCHELL and Judge COSTELLO concur.