**UNITED STATES, Appellee,**

v.

**Private (E–1) Antonio FINDLAY, SSN 127–50–6457, United States Army, Appellant.**

**SPCM 13708.**

U. S. Army Court of Military Review.

30 July 1979.

---

7. 6 M.J. 505 (A.F.C.M.R.1978) at 511.

8. *See Stewart v. Stevens*, 5 M.J. 220 (C.M.A. 1978), n.2 at 221.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Willard E. Nyman, III, JAGC, and Captain Julius Rothlein, JAGC, were on the pleadings for the appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, and Captain Paul W. Jacobson, JAGC, were on the pleadings for the appellee.

Before CARNE, DRIBBEN and GARN, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

Pursuant to his pleas the appellant was convicted by a special court-martial with officer members of larceny of stereo equipment valued at $541.00. His adjudged and approved sentence was a bad-conduct discharge, confinement at hard labor for three months and forfeiture of $200.00 pay per month for three months.

*Inter alia*, the appellant asserts that the military judge erred by denying the defense counsel's challenge for cause of four court-martial members. The record shows that during voir dire examination by the defense counsel he asked LTC "N" if he thought a guilty plea would be a matter in aggravation or a matter in mitigation. LTC "N" replied, "[a]bout fifty-fifty, as far as I'm concerned." The military judge interrupted and informed the panel that they would be instructed shortly that a guilty plea "is a matter in mitigation which must be considered along with all of the facts and circumstances of the case [and that] [t]ime, effort and expense to the Government obviously have been saved by a plea of guilty and such a plea also is a manifestation of repentance and it *would be* the first step toward rehabilitation." (Emphasis added.) The defense counsel asked LTC "N" if he would follow the instruction and if he felt a guilty plea was a matter in mitigation. LTC "N" replied in the affirmative. The defense counsel asked the other members if anyone would not consider the guilty plea

as a matter in mitigation. Colonel "F" stated that "Had he not instructed me just then I would have answered that I would not consider [the guilty plea] mitigation, but I've also stated earlier that I could abide by the instructions . . . but you must know that before he gave those instructions I would not consider the matter in mitigation." Major "C" then stated "I feel the same way about it. My own concern is that I personally find it very difficult to consider the fact that somebody had pleaded guilty as a mitigating factor, but my mind is open enough to at least weigh that in with all the other factors that are brought forward." The defense counsel asked Colonel "F" if he shared the view stated by Major "C" and Colonel "F" said he did.

The defense counsel then asked Colonel "F" the following question, "prior to hearing the judge's instruction, do you feel or would you have felt and do you feel now that a plea of guilty is usually the first step towards rehabilitation?" Colonel "F" replied "No." When Major "C" was asked the same question he answered "I don't feel that it would be. Not necessarily. It could be, but I don't believe it's necessarily that." The defense counsel then asked the other members the same question. LTC "V" stated, "I think it's probably a first step toward rehabilitation." and LTC "N" stated that he agreed with LTC "V's" view. LTC "D" answered "I'm not sure that's the first step." Following up, the defense counsel asked LTC "D" if he would have difficulty viewing a guilty plea as a matter in mitigation. In response, LTC "D" stated "By itself I would say yes."

Next the defense counsel addressed the entire panel saying "I'm again referring to the judge's instruction that you will be receiving dealing with a plea of guilty, does any member of the panel feel that a guilty plea ordinarily does not show any sign of repentance . . . ?" Major "C" indicated that there is "just as much possibility that it does as it doesn't. . . ." LTC "D", COL "F", and LTC "N" all stated that they agreed with that view.

Following that, the defense counsel reminded the panel of the nature of the offense charged and he asked Colonel "F" if he would feel required to adjudge a sentence that would include confinement at hard labor if the defense submitted no evidence in extenuation and mitigation. The military judge did not allow an answer and instructed the defense counsel that he could not ask the members to speculate on the sentence, but that he could ask a member if he was predisposed toward a certain type of sentence, regardless of the evidence presented. Accordingly, the defense counsel asked LT "P" if he would be predisposed to adjudge confinement at hard labor after hearing that the offense was a barracks larceny. He stated that he would not be. The same question was asked of Major "C" and he responded as follows: "I feel that unless there is something mitigating or extenuating or aggravating—things that caused it to happen—if there is not some reason for it happening, I am predisposed to award a stiff punishment."

Next the defense counsel asked the members if anyone felt predisposed to adjudge a punitive discharge because the offense was a barracks larceny. The military judge suggested that the question was not being understood and that it should be rephrased to ask whether a member would be inclined to impose a discharge or confinement regardless of the evidence presented. The defense counsel asked if anyone thought that a punitive discharge ought to be given regardless of what evidence was presented because it was a barracks larceny. All indicated by a negative response that they would not be so inclined.

Subsequently, the trial counsel asked Colonel "F", Major "C", LTC "N", and LTC "D" if they were willing to follow the judge's instructions and not their own personal feelings in regard to the sentence. All indicated that they were able to do so.

After the voir dire examination, the defense counsel challenged Colonel "F", LTC "D", LTC "N" and Major "C" for cause on the basis that the responses of each member showed an unwillingness to accept the view

that a guilty plea is a matter in mitigation and may be a first step toward rehabilitation. Major "C" was also challenged on the basis that he was predisposed to award a "stiff" sentence. The trial judge denied each challenge.

We must first decide whether the challenged members were disqualified and should have been dismissed because of their alleged unwillingness to accept the military judge's preliminary advice that a guilty plea is matter in mitigation, that it would be a first step toward rehabilitation and that it is a manifestation of repentance.

The record shows that the military judge subsequently instructed[1] the court on the legal significance of a guilty plea—specifically how a guilty plea should be viewed in adjudging an appropriate sentence. The record also shows that until the military judge gave his initial advice each of the challenged members had had difficulty viewing a guilty plea as a matter in mitigation. On the other hand each challenged member stated that he would follow the judge's instruction and not his "own personal feelings" on this subject.

 It is well established that a challenge for cause determination is vested in the sound discretion of the military judge and his decision will not be disturbed on appeal absent an abuse of discretion and a showing of prejudice to the accused.[2] With regard to the type of challenge made in this case, the test that must be applied by a military judge is whether the challenged member is mentally free to render an impartial sentence based upon the law and the evidence.[3] Furthermore, when voir dire examination reveals a court-martial member's preconceived views and such views raise an

issue as to whether he or she is impartial as in the instant case, the military judge must determine whether such preconceived views "will easily yield to the evidence presented in open court and to the law propounded by the trial judge."[4]

In our opinion the challenged members pass this test. The fact that they did not think that a guilty plea was *usually* a step toward rehabilitation and the fact that they thought a guilty plea may or may not indicate such a step, shows that they believed that each case must be resolved on its merits. Likewise, belief that a guilty plea may or may not show repentance is not inconsistent with the view that a guilty plea is one manifestation of repentance. The members' unhesitating willingness to accept the judge's instruction shows that they had open minds. Their forthright responses and full disclosures give no evidence of inelastic views on sentencing. We are satisfied that the challenged members did accept the judge's instruction and we are also satisfied that the trial judge did not abuse his discretion in denying these challenges.

The remaining question is whether Major "C" was disqualified because he was predisposed to adjudge a "stiff sentence" absent some reason for the event happening.

 As stated above, Major "C" indicated he would be predisposed to award a stiff sentence if no reason was offered to explain why the offense happened, but he also stated that he would follow the judge's instructions. It is clear that a court-martial member is disqualified if he or she has an inelastic attitude toward the imposition of a punitive discharge which is based solely on

1. The military judge initially advised the court-martial members that a guilty plea "would be a first step toward rehabilitation" whereas, the model instruction in paragraph 8–5 of DA Pam 27–9, Military Judge's Guide, 1 June 1971, states that a guilty plea "may be" a first step toward rehabilitation. This discrepancy was corrected in the formal instructions to the court where the trial judge adhered to the language of the model instruction.

2. *United States v. Parker*, 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955); *United States v. Baker*, 2 M.J. 773 (A.C.M.R.1976); *United States v. Sumter*, 1 M.J. 588 (A.C.M.R.1975).

3. *United States v. Parker, supra* note 2, at 284–85, 19 C.M.R. at 410–11.

4. *United States v. Dean*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954).

the nature of the crime.[5] However, the United States Court of Military Appeals has held that a court-martial member is not disqualified because he is opposed to some crimes more than others. "The degree of such a distaste is not, in itself, a test of the member's qualifications, and he is not disqualified because he abhors the particular crime charged more than others."[6]

We find in the responses of the challenged member no indication that his predisposition would likely remain unchanged by any evidence of extenuation or mitigation. To the contrary Major "C" indicated that he would keep an open mind and weigh all the circumstances in arriving at an appropriate sentence. Furthermore, the response in question shows clearly that evidence in extenuation and mitigation will affect his decision regarding an appropriate sentence. We view Major "C's" response as indicating no more than a distaste for the offense charged. Consequently the military judge did not abuse his discretion in denying the challenge.

We have examined the remaining assignments of error and find that they are nonmeritorious.

The findings of guilty and the sentence are affirmed.

Judge GARN not participating.

5. *United States v. Cosgrove,* 1 M.J. 199 (C.M.A. 1975); *United States v. Karnes,* 1 M.J. 92 (C.M.A.1975); *United States v. Cleveland,* 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965), note 4.

6. *United States v. Parker, supra* note 2.