UNITED STATES, Appellee,

v.

Captain Jerry W. MITCHELL 441–42–5723 United States Army, Appellant.

CM 438532.

U. S. Army Court of Military Review.

29 July 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Elliot J. Clark, Jr., JAGC, Captain James A. McAtamney, JAGC, and Captain Michael K. King, JAGC, were on the pleadings for the appellant.

Major Ted B. Borek, JAGC, Captain Paul G. Thomson, JAGC, and Captain Glenn D. Gillett, JAGC, were on the pleadings for the appellee.

Before RECTOR, CARNE and O'DONNELL, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

The appellant was convicted of a number of offenses relating to blackmarketing activities while a member of the 2d Infantry Division in the Republic of Korea. He was sentenced to be dismissed from the service and to pay a fine of $10,000.00. Before us, he raises several assignments of error, four of which merit discussion.

## I

The appellant urges the Court to set aside the findings as to Specifications 1 and 3, Charge I because the trial judge erroneously instructed the court that solicitation under Article 134 requires only a general intent as opposed to a specific intent. Relying upon the rationale contained in *United States v. Benton*, 7 M.J. 606 (N.C.M.R.1979), *pet. denied*, 8 M.J. 227 (C.M.A.1980), the appellant maintains that the offense of solicitation requires a specific intent which must be determined by a subjective test rather than the objective test permitted by the trial judge's instructions. We disagree.

■■■ The proscribed conduct is the inducing, enticing, or influencing of another to commit an offense punishable under the Code. While, as a general rule, negligent and unintentional acts do not constitute an offense, a person's acts or words which seriously portray and convey to another an earnest request or desire to commit a crime constitutes solicitation. Obviously, such conduct must be accompanied by a culpable mental state commonly described as *mens rea*. We view the gravamen of the offense to be the corruption caused by planting the seed or idea to commit a crime. This can be determined by the objective test requiring only a general intent. See Clark and Marshall, *Law of Crimes*, Sections 4.02–4.04 (7th Ed. 1967). Read as a whole, the trial judge's instructions adequately portrayed this standard and provided sufficient guideposts for an informed consideration of the essential element of the offenses.

## II

The next contention is that the military judge improperly denied the defense request for three witnesses. Two of them were character witnesses who were expected to testify on the merits as well as at the sentencing portion of the trial.[1] The other witness was expected to provide testimony attacking the credibility of one of the key prosecution witnesses. Based upon the adverse ruling of the military judge, the defense introduced stipulations of expected testimony as to each witness.

The first of the requested character witnesses, a retired colonel, had served with the appellant for approximately one and a half years during a period commencing two years previous to the offenses. He regarded the appellant as "an honest, outstanding, responsible commander." The other character witness, a former captain, had known the appellant as an enlisted man in 1970. He believed the appellant to be honest, reliable, and highly capable.

The defense presented numerous other character witnesses—some by live testimony and others by stipulated testimony. Also, numerous exhibits evidencing good character were admitted. Among the live witnesses were the appellant's wife, a brigadier general who knew the appellant during his officers' basic course, an Air Force lieutenant colonel who had served with the appellant for six weeks in 1976, and a major and four noncommissioned officers who were currently serving with the appellant.

■■■ The basic rule for determining whether an accused is entitled under the Sixth Amendment to the production of witnesses is that their testimony must be material and noncumulative. *United States v. Williams*, 3 M.J. 239, 243 (C.M.A.1977); *United States v. Carpenter*, 1 M.J. 384 (C.M.A.1976). *See United States v. Tangpuz*, 5 M.J. 426 (C.M.A.1978). If the criteria for production are met, the compelled stipulation of their testimony is not an adequate substitute for the personal appearance of the witnesses. *Carpenter, supra*, at 386. However, a defense witness whose testimony, albeit material, is merely cumulative need not be produced by the government.

■■■ The testimony of the two character witnesses was merely cumulative; their testimony was well supplemented by the testimony of others. In view of the live testimony presented, the stipulated testimony, and the extensive documentary evidence, we hold that the military judge did not abuse his discretion in denying the defense

---

1. The appellant based the major portion of his defense on his good character.

request for production of these two witnesses.

■ The remaining witness, a Staff Sergeant Chadwell, was expected to testify that a prime government witness had a motive to falsify his testimony. Sergeant Chadwell's testimony would be both material and independent of any other testimony. The defense request for his production, however, was untimely, having been made only after the government had rested.[2] The defense had known of Sergeant Chadwell's expected testimony for two months prior to trial. The defense assertion of surprise that the accomplice was to testify is unfounded as the witness was granted immunity before trial and could reasonably have been expected to be called as a government witness.

■ The timeliness of a defense request for a witness may be considered by the military judge, although untimeliness *per se* is not a grounds for denying a request for a witness whose testimony is material and noncumulative. *See United States v. Green*, 2 M.J. 823 (A.C.M.R.1976). As the Court of Military Appeals noted in *United States v. Hawkins*, 6 U.S.C.M.A. 135, 142, 19 C.M.R. 261, 268 (1955), the "touchstone for untimeliness should be whether the request is delayed unnecessarily until such a time as to interfere with the orderly prosecution of the case." *See United States v. Qualls*, 9 M.J. 662 (N.C.M.R.1980).

Our reading of the record convinces us that the defense delay in requesting the witness was such as to interfere with the orderly prosecution of this case. As no good cause was shown for the delay, we find that the judge did not abuse his discretion in denying production of the witness. Even if we were to hold that the judge

erred, reversal is not required as we are convinced beyond a reasonable doubt that production of the witness would not have benefitted the appellant in view of the overwhelming credible evidence of guilt.[3]

### III

The appellant also asserts that the military judge improperly denied a defense challenge to two court members. The first member was a special court-martial convening authority with a close professional relationship with the trial counsel.[4] The court member stated he had a high regard for the judgment and advice of the trial counsel and that the trial counsel had obtained convictions in all eighty of the courts-martial he had convened. However, he also stated in essence that the relationship he had with the trial counsel would not affect his presumption of the appellant's innocence, his ability to abide by the military judge's instructions, or his determination to base his decision on the evidence presented. He added that even though he was a convening authority, he did not believe that the appellant's presence in court indicated he must be guilty of something.

■ While we discourage the practice of detailing a convening authority to courts-martial where he has a close professional relationship with the trial counsel, the practice does not provide a ground *per se* for challenge. *United States v. Baker*, 2 M.J. 773, 776 (A.C.M.R.1976). An "actual or implied bias must be shown." *Id.* As no such bias was demonstrated, the challenge was properly denied.[5]

■ The second member was challenged because of an alleged inelastic attitude toward sentencing. He stated on *voir dire*

2. At this time, the witness was in the United States on leave and would not return to Korea for several weeks. The military judge refused to grant a continuance to await his return.

3. "Where evidence in the record of trial demonstrates beyond a reasonable doubt that the unadmitted testimony would not have tipped the balance in favor of the accused and the evidence of guilt is so strong as to show no reasonable possibility of prejudice to the appel-

lant, reversal is not mandated." *United States v. Lucas*, 5 M.J. 167, 172–73 (C.M.A.1978).

4. The trial counsel was the judge advocate assigned to provide criminal law advice to the member.

5. The appellant subsequently exercised his peremptory challenge to remove the member.

that he felt "very strongly" that an officer who was convicted of the offenses with which the appellant was charged should be dismissed, that it would be unlikely for him to vote to retain such an officer, and that he would place the burden on the officer to demonstrate why he should be retained in the Army. However, he also said that in spite of his strong feelings about dismissal he could lay them aside, that he would base his decision upon the evidence presented and the instructions of the military judge, and, if appropriate in view of the evidence, that he could vote for no dismissal.

As the Court of Military Appeals stated in *United States v. Cleveland*, 15 U.S.C. M.A. 213, 215, 35 C.M.R. 185, 187 (1965), "a general or abstract bias against particular classes of offenses or persons is not necessarily disqualifying." The test is whether such a bias or impression " 'will easily yield to the evidence presented in open court and to the law propounded by the trial judge.' " *Id.*, at 215–16, 187–88, citing *United States v. Deain*, 5 U.S.C.M.A. 44, 49, 17 C.M.R. 44, 49 (1954). In sum, "the applicable criterion is the absence of bias on the part of the court members that cannot be put to one side" in favor of the evidence and the applicable law. *Id.*

Although this particular court member was predisposed to adjudge a dismissal if the appellant were convicted, he did not possess such an inelastic attitude concerning a dismissal which would preclude him from acting impartially as to findings or sentencing. Rather, he demonstrated that he could set aside his initial feelings, base his decision upon the evidence presented, and if the evidence were presented, vote for retention of the appellant.

Thus, as to this member as well, the military judge did not abuse his discretion in denying the defense challenge.

## IV

At trial, three enlisted persons who were involved in the offenses charged against the

appellant testified for the government under grants of immunity. In addition, three witnesses who were not involved in the charges testified concerning uncharged blackmarketing activities with which they were involved with the appellant. These witnesses were not under any charges and had not been granted immunity from prosecution. The military judge permitted the testimony over defense objection.

■■■ Evidence of prior uncharged actions of misconduct is inadmissible to establish that an accused has a disposition to commit crimes in general or to commit the specific type of offense involved in a given case. However, if evidence of an accused's prior misconduct tends to establish a relevant fact other than a criminal disposition on his part, the evidence may be admissible. *See United States v. Perl*, 2 M.J. 1269, 1272–73 (A.C.M.R.1976). Among the examples provided by the Manual for Courts-Martial of situations where the evidence of uncharged misconduct may have logical relevance other than to show a criminal disposition are acts tending to show plan or design.[6]

■■■ In the instant case, the evidence of uncharged misconduct, which generally related to the same time and place as the offenses charged, clearly demonstrated a similar, if not identical, *modus operandi* on the part of the appellant to use subordinates to transfer duty-free goods to unauthorized Korean nationals. The evidence, therefore, was relevant and admissible so long as its potential prejudicial impact did not outweigh its probative value. *See United States v. Janis*, 1 M.J. 395 (C.M.A.1976); *United States v. James*, 5 M.J. 382 (C.M.A. 1978). Under the circumstances, we are satisfied that the highly relevant nature of the evidence far outweighs its prejudicial impact and hold that the military judge properly received the testimony.[7]

The findings of guilty and the sentence are affirmed.

6. Paragraph 138*g*, Manual for Courts-Martial, United States 1969 (Revised edition). This case was tried before 1 September 1980, the effective date of Change 3, MCM, 1969 (Rev.).

7. The judge correctly instructed the court members of the limited purpose for which the testimony was received.

Judge O'DONNELL, concurring in part and dissenting in part:

I concur as to Parts II, III, and IV of the majority opinion. I dissent, however, as to Part I.

My disagreement with the majority goes to the nature of the offense of solicitation.[1] The majority holds that solicitation requires only the general criminal intent present in all crimes, i. e., the intent to do the deed which constitutes the act of the crime. As I view the offense, a specific intent is also required, viz., an intent that the person solicited actually commit the offense solicited. The common-law offense of solicitation required this intent and I find no basis for concluding otherwise. See LaFave and Scott, *Criminal Law*, § 58 (1972). Accord, *United States v. Benton*, 7 M.J. 606 (N.C.M. R.1979), *pet. denied*, 8 M.J. 227 (C.M.A. 1980).[2]

The military judge appears to have accepted the proposition that a specific intent is required. Thus, in his instructions, he advised the court members: "Now, I caution you that solicitation refers to any statement, oral or written, or any other act of conduct which may reasonably be construed as a serious request or advice to bring about the offense named in the specification." The difficulty with the instruction is that it establishes an objective standard for a subjective element. It is the state of mind of a real person—the appellant—that we are concerned with, not that of the incorporeal entity known as the reasonable man. The instruction effectively permitted the court members to find the required intent even though the appellant may have entertained no such intent.[3] The instruction therefore is fatally defective. I would set aside the findings of guilty as to those charges.[4]

---

1. The appellant was convicted *inter alia* of two specifications of wrongfully.soliciting a subordinate to violate a regulation governing the purchase of duty-free goods in the Republic of Korea contrary to Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. Article 82 of the Code 10 U.S.C. § 882 specifically proscribes solicitation to commit desertion, mutiny, sedition, and misbehavior before the enemy. Solicitations to commit other offenses under the Code are charged as violations of Article 134. *United States v. Oakley*, 7 U.S.C. M.A. 733, 23 CMR 197 (1957).

2. The Government, citing paragraph 161 of the Manual for Court-Martial, United States, 1969, (Revised edition), concedes that solicitation under Article 82 of the Code requires an intent that the person solicited commit the offense, but contends, *without citation of authority*, that such an intent is not an element of solicitation under the general article.

3. This is contrasted with an instruction properly permitting the members to find an intent circumstantially by inferring that a person must have intended the natural and probably consequences of an act purposely done by him. *See*, e. g., *United States v. Miller*, 8 U.S.C.M.A. 33, 23 C.M.R. 257 (1957).

4. The Navy Court in *United States v. Benton*, 7 M.J. 606 (N.C.M.R.1979), set aside the solicitation conviction because of the failure of the judge to instruct on the required intent. Nonetheless, it affirmed a lesser offense of wrongfully communicating a request to commit an offense, which it found to be a simple disorder under Article 134 of the Code. I must part company with the Navy on this point and conclude that under the facts of this case disorderly conduct is not a lesser included offense.