UNITED STATES, Appellee,

v.

**Private First Class Reginald D. WITHERSPOON, SSN 239–11–2001, United States Army, Appellant.**

**CM 442632.**

U. S. Army Court of Military Review.

30 Sept. 1982.

Colonel William G. Eckhardt, JAGC, Captain Kenneth G. Gale, JAGC, and Captain Thomas R. Peppler, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Patrick M. Flachs, JAGC, and Captain John L. Plotkin, JAGC, were on the pleadings for appellee.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Judge:

The appellant was tried by a general court-martial consisting of officer and enlisted members. In accordance with his pleas, he was found guilty of two specifications of forcible sodomy, one specification of extortion, and four specifications of assault consumated by a battery, in violation of Articles 125, 127, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 927, and 928 (1976). The court members sentenced him to a dishonorable discharge, confinement at hard labor for ten years, total forfeitures, and reduction to the grade of Private E–1. Pursuant to a pretrial agreement, the convening authority reduced the term of confinement to five years and otherwise approved the remainder of the sentence as adjudged.

The appellant contends that the military judge erred by denying challenges for cause against Lieutenant Colonel (LTC) Smith, Lieutenant Colonel (LTC) Lanpher, and First Lieutenant (LT) Legler. We disagree.

After the military judge found the appellant guilty, the court members received their preliminary instructions, were sworn, informed of the general nature of the charges, and examined on *voir dire*. The civilian defense counsel asked LTC Smith about his views concerning rehabilitation possibilities of an individual convicted of homosexual type offenses. LTC Smith expressed his unfamiliarity with such matters but felt that in all cases the question of rehabilitation "should always be entertained." Because of their effect on discipline and barracks atmosphere, he considered barracks type homosexual assaults to be serious offenses.[1] LTC Smith felt that homosexual activities have no place in the Army. In regard to his feelings about homosexuality, he considered himself to be biased. As to the question of what it would take to convince him that the appellant should be allowed to remain in the Army, LTC Smith answered that it would have to be demonstrated to him "that the incident was an isolated aberration of behavior; it was atypical of anything that had ever gone on before, and that kind of thing." He did not feel constrained to give a punitive discharge merely because the appellant pled guilty to the charges.[2]

LTC Lanpher was similarly asked for his thoughts whether rehabilitation of an individual involved in the type of offenses to which the appellant pled guilty was "possible, or unlikely." His reply was that reha-

---

1. "Q. When you use the phraseology 'serious,' when it comes to punishment do you have any thoughts concerning the degree of punishment based on the fact that you feel it's a serious offense—or offenses?
   A. If you're asking me whether I'm biased—predisposed to one end or another . . .
   Q. No. What I'm getting at is—do you think that because it's a serious offense a person should go to jail for a long time, as opposed to a short time for a not so serious offenses?
   A. No. I think that the nature of the offense, if in fact that's been admitted to—proven—yeah, there is a bearing in terms of determining the type of sentence that follows therefrom."

2. "Q. Colonel Smith, are there circumstances—I know that the facts in this case have not been presented to you. Are there circumstances—or are there facts that could be presented which would cause you to believe that a punitive discharge would not be appropriate? In other words, would you feel constrained to give a punitive discharge regardless of whatever facts come out, based upon these Charges?
   A. No, I don't think so."

bilitation depends on the accused's record before as well as after the commission of the offenses. Without knowing such matters, LTC Lanpher felt that he was not able to answer directly the defense counsel's question. Based on his experience as a soldier, and as a commander, it was his view that each case was different. Generally, in the type of cases similar to that of the appellant's, he would opt for discharge. However, as he knew "nothing" about the appellant's case, presumably he was not then situated to express his opinion about its disposition. When pressed further, he answered that since he knew "absolutely nothing about the date, time, and place of occurrence, other than what's in the charge sheet—the relationship of the individual to the other people involved, nor the circumstances by which the force indicated in the Charge Sheet was used, . . . rehabilitation should not be done within the confines of the service, if at all; and . . . that if it's going to be done, [it should] be done during some period of incarceration."

LT Legler was similarly queried. His response was that, to some limits, everyone is capable of rehabilitation. In appellant's case, LT Legler felt he would have to know "a lot more than [he knew] so far" before deciding whether the appellant should be allowed to remain in the Army.[3]

■ General distaste for a particular class of offenses or persons is not necessari-

---

3. **"Q.** [C]onsidering those Charges that he's pled guilty to, what types of things do you as an officer look at to determine whether or not a given individual has a good potential for rehabilitation, or has no potential for rehabilitation?
A. I'd have to be working around him more to make that kind of a decision. I'd have to see what he's done and . . .
Q. His past record would be important?
A. His past record and his future performance.
Q. Do you think that an individual—a soldier—can be rehabilitated of an offense such as this and successfully be reintegrated in the Army?
A. Anything's possible.
Q. Do you think it's reasonable, or would it be just the very unusual case?
A. I believe it would be a rare case.
Q. Now, what types of things would you be looking for, as a Platoon Leader for example? You would see that there's an individual coming to your Platoon who was convicted one or two years ago of forceful sodomy. What type of things would you be looking for when you looked over this new person coming into your Platoon, as to whether or not he was going to hack it or whether or not you wanted to put him off in a corner somewhere?
A. I'd keep an eye on him, but I'd also watch his job performance. You know, what he's done in the past might show something about what's going to happen in the future, but it's not always a straight line thing.
Q. Do you think there's a reasonable likelihood that a period of confinement at the Army confinement facilities can rehabilitate an individual involved in an act such as this?
A. I really don't know.
Q. Well, if it were up to you; say you were sitting in command and a file came across your desk saying that Private Witherspoon has admitted to all of these things, and you had to make a decision as to whether or not you were going to allow him to stay in the Army. Do you have any thoughts concerning that?
MJ: I have one. The first thing he'd do would be to send it back for some facts. If you want to ask him those kind of questions, you give him facts upon which to base an answer.
DC: Yes, Your Honor.
Q. Let me back up, based on the Judge's question. Other than whether or not he's a first offender, or his past duty conduct, what other types of things would be important to you in making up your mind?
A. Just whatever I said; just the way he is, himself. I'd have to see how he works and see whether he's worth his weight. If he's going to bring down the whole unit, I don't want him around.
Q. Do you have any thoughts on whether or not—concerning the offenses that Private Witherspoon has pled guilty to—whether or not a lengthy prison sentence would do more harm than good?
A. I couldn't say it would do any more harm, and it might do some good.
Q. Do you have any person or religious reservations about individuals using alcohol?
A. No.
Q. And, finally, what would it take to convince you that Private Witherspoon should be allowed to remain in the Army?
A. A lot of extenuating circumstances, or his Commander—which I don't feel is—you know, by his Commander pushing Charges already, already bringing them up—it would take quite a bit; a lot more than I know so far."

ly disqualifying. *United States v. Cleveland,* 15 U.S.C.M.A. 213, 215, 35 C.M.R. 185, 187 (1965); *United States v. Huggins,* 14 M.J. 534 (A.C.M.R.1982); *United States v. Mitchell,* 11 M.J. 907, 911 (A.C.M.R.1981); *United States v. Findlay,* 7 M.J. 931, 935 (A.C.M.R.1979), *pet. denied,* 8 M.J. 242 (C.M.A.1980). Even an initial bias or impression that a punitive discharge is appropriate is not necessarily disqualifying. *United States v. Tippit,* 9 M.J. 106 (C.M.A.1980); *United States v. McGowan,* 7 M.J. 205, 206 (C.M.A.1979). As observed by Chief Judge Quinn:

> Some offenses are so heinous or so repugnant to common decency that the first thought of a court member might well be that the accused should, if convicted, be sentenced to a punitive discharge. A provisional impression of this kind is practically unavoidable. The law recognizes that a juror may enter the jury box with an unfavorable inclination toward certain offenses. See *United States v. Dean,* 5 U.S.C.M.A. 44, 17 C.M.R. 44. Such a juror, however, is not automatically disqualified.

*United States v. Fort,* 16 U.S.C.M.A. 86, 90, 36 C.M.R. 242, 246 (1966). The test in each case is whether such bias or impression will yield to the evidence and the instructions of the military judge. *United States v. McGowan, supra; United States v. Cleveland, supra.*

We find that LTC Smith, LTC Lanpher and LT Legler were not disqualified. They were questioned about the rehabilitative potential of a person guilty of forcible sodomy, extortion, and assaults upon his fellow soldiers in the barracks. They expressed their reservations about such an individual's future in the Army and their views about the appropriateness of confinement of such an individual. Each member indicated a need for additional information before expressing his opinion about the appropriateness of punishments in appellant's case. In our view, they harbored no inelastic attitudes and were qualified to sit on appellant's case.

The findings of guilty and the sentence are affirmed.

Senior Judge MILLER and Judge BADAMI concur.