UNITED STATES, Appellee,

v.

Specialist Four Larry D. YARBOROUGH, SSN 020–42–9462, United States Army, Appellant.

No. CM 442223.

U. S. Army Court of Military Review.

30 Nov. 1982.

---

Captain Paul J. Moriarty, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Captain David M. England, JAGC.

Captain John L. Plotkin, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel John T. Edwards, JAGC, and Captain Patrick M. Flachs, JAGC.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

### OPINION OF THE COURT

KUCERA, Judge:

The appellant was convicted by a general court-martial of unlawful entry and indecent assault, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976). The convening authority ap-

proved the adjudged sentence of a bad-conduct discharge, confinement at hard labor for two years, total forfeitures, and reduction to the grade of Private E–1.

### I

The first assignment of error mandates a lengthy exposition of facts leading up to the appellant's present contention that the military judge abused his discretion by denying the defense an opportunity to explore in its *voir dire* examination, the biases of the court members.

At trial, both sides conducted the *voir dire* examination. The trial counsel first asked the court members collectively if they realized that they were to base their decision only on the evidence and not on any preconceived sympathies or biases. All members replied affirmatively. Counsel then asked four individual members different questions and obtained their individual responses concerning whether a soldier's room in the barracks is entitled to the same protection as any other dwelling, their willingness to convict based on testimony of only one but truthful eyewitness, and reasonable doubt and its application to each element of the offense as well as its nonapplicability to "unimportant facts."

The trial defense counsel asked some thirty questions of the members about: (1) their personal knowledge of her (defense counsel), the prospective witnesses and officers who preferred and forwarded the charges against the appellant; (2) the members' prior legal training and experience as law enforcement officials; (3) their prior service on courts-martial; (4) whether any of their friends or family were a victim of a crime against their person; (5) any problems which they may experience by sitting on the case; (6) presumption of innocence; (7) burden of proof; (8) meaning of reasonable doubt; (9) willingness to follow military judge's instructions; (10) right of the appellant to remain silent and not to put on a defense; (11) consideration of each witness' sincerity, conduct, intelligence, and ability to observe and accurately remember; and (12) assessment of the victim's credibili-

ty in the light of certain factors of her anticipated testimony.

In an effort to guide the defense *voir dire* along its due course, the military judge interposed himself six different times. On one such occasion he warned the trial defense counsel that he was not going to let her incorporate and repeat all of his instructions. Counsel then focused her questioning on the credibility of Private Matthes' (victim) testimony. When in her third such question she asked:

> Do you each agree to consider the anticipated testimony of Private Matthes that she had been to a party that evening [and] she had consumed some quantity of alcoholic beverages. . . .

The military judge interrupted and advised the court members that:

> You're going to have to consider all of evidence that you hear throughout the trial and based upon all the evidence that's presented and the instructions I give you, you're going to have to go into the deliberation room and have a full and free discussion, and each of you resolve individually in your mind the issue as to guilt or innocence. Now is there any member who will not be able to consider all of the evidence presented whether it's by the government or the defense?

There being no response from any of the members, the military judge asked the trial defense counsel to "[p]lease move on to some other area." When she continued to persist that her questions were appropriate to be asked, the military judge asked that she submit any further *voir dire* questions in writing. He would not allow her to personally propound any more questions directly to the members. He then sent the members into the deliberation room, and informed the trial defense counsel that:

> Voir dire has its purpose, opening statements have their purpose and the presentation of evidence has its purpose and closing arguments and instructions—each have their purpose. Now, you've gone far beyond what I consider to be proper realms of voir dire. I'll let you present any other questions that you want to me in writing and I'll decide and then I'll ask them. But you're done as far as oral questions are concerned.

The trial defense counsel responded by giving to the military judge 32 written questions for him to ask. The military judge examined all such questions but agreed to propound only a part of them to the court members.*

The trial defense counsel then requested individual examinations of court members Kellett and Stringer. The basis for the request was that: (1) Kellett's wife had on a prior occasion been assaulted; and (2) Stringer indicated he knew the appellant and three prospective witnesses. After reminding the trial defense counsel that she was not entitled to a "free rein in voir dire"

---

\* The reasons for propounding some of the questions but not the others appear in the following colloquy between the military judge and the trial defense counsel:

> MJ: Now, the first page appears to be—will you consider the anticipated testimony of somebody that something happened? Of course they will. The answer to one general question was to that effect. First three pages all appear to be anticipated testimony.
> (Short pause.)
> MJ: You have a copy of these?
> DC: No, sir, I don't.
> MJ: On page four you ask about the conduct of the defense counsel have any prejudicial effect on the accused. [sic] I'll ask those questions. Rating scheme, I guess that's what that says and I'll ask that. Following instructions on the burden of proof and reasonable doubt and such, I think that's been

covered as many different ways as possible. Another question about seniority in rank. I'm not going to ask the question about considering this fact that he's all ready got a conviction in arriving at a sentence. That's a proper matter for argument. Full range of punishments is generally the next question, I'll ask. What's this question about a punitive discharge is a possible misnomer, is that what you're trying to say there?
> DC: No, sir.
> MJ: What is that?
> DC: Sir, may I approach the bench?
> (The defense counsel approached the military judge's bench.)
> DC: That no punishment is—is a possible misnomer since Specialist Yarborough would all ready have a federal conviction.
> MJ: All right, you can argue that. . . .

and that she had "abused it at the beginning," the military judge recalled Kellett and asked:

> You indicated in response to one question that your wife had been the victim of an assault. Would that incident in her life in any way effect [sic] your impartiality to sit in this case and determine the guilt or innocence of the accused solely on the basis of the evidence presented?

Kellett replied, "No, sir." The military judge refused to inquire into the time and circumstances of the assault.

The military judge also recalled Springer who explained that he knew appellant as a cook whom he supervised. Springer denied that this knowledge would affect his determination of appellant's credibility in the event he testified. The military judge asked whether the trial defense counsel wished to question Stringer "along the lines of the questions ... just asked." She replied, "No, sir."

The trial defense counsel then challenged Kellett on the grounds that his wife "has been the victim of a sexual assault." After pointing out that nothing had been said about a sexual assault, the military judge denied the challenge.

In *United States v. Parker,* 6 U.S.C.M.A. 274, 19 C.M.R. 400, 406 (1955), the Court of Military Appeals observed that:

> [O]ne of the well-recognized rules of criminal jurisprudence is that wide discretion is vested in trial judges as to questions which must be answered by jurors on voir dire. Appellate courts should reverse only when a clear abuse of discretion, prejudicial to a defendant, is shown. Conceding that the purposes of voir dire are to determine whether individual jurors can fairly and impartially try the issues, and to lay a foundation so that peremptory challenges can be wisely exercised, those purposes do not permit the examination to range through fields as wide as the imagination of counsel. Because bias and prejudice can be conjured up from many imaginary sources and because peremptory challenges are uncontrolled except as to number, the areas in

which counsel seek to question must be subject to close supervision by the law officer.

■ In the case at bar the military judge placed realistic procedural controls on the *voir dire* examination. *United States v. Slubowski,* 7 M.J. 461 (C.M.A.1979). As he correctly pointed out, a question can be asked in different ways only so many times before it becomes monotonous. Substantively, we agree that as a general proposition, merely obtaining subjective assurances of a court member's impartiality would be insufficient, but such is not the case before us. Here a court member disclosed his wife had been the victim of an assault. Bias, if it existed, was a general bias against those who have committed assaults, rather than a particularized bias against this accused of whom the court member had no prior knowledge. Such bias is shared by all law abiding citizens and is not disqualifying if it will yield to the evidence and the instructions of the military judge. *United States v. Witherspoon,* 14 M.J. 781 (A.C.M.R.1982); *United States v. Davenport,* 14 M.J. 547 (A.C.M.R.1982). In light of the court member's specific and unequivocal claim of impartiality in spite of the previous assault upon his wife as well as his replies to a wide range of questions all indicating that in general he could sit and judge the case fairly and impartially, we hold that the military judge did not abuse his discretion. *See United States v. Tippit,* 9 M.J. 106 (C.M.A.1980).

■ We have also considered appellant's contention that the military judge abused his discretion by refusing defense inquiry into the "potential bias" of Springer who assured the court that his duty-related contacts with defense witnesses would not affect his credibility. Although the military judge invited the trial defense counsel to submit further questions, she declined to do so. Appellant is now barred from asserting on appeal that *voir dire* was improperly truncated.

■ Appellant's contention that the failure to question court members about racial

prejudice is similarly meritless. Although racial prejudice may be an appropriate subject for inquiry, *United States v. Davenport, supra,* trial defense counsel's failure to object to its omission when the military judge asked her if there were any additional questions constitutes waiver. *United States v. Pearson,* 13 M.J. 922, 925 (N.M.C. M.R.1982).

## II

Prior to sentencing, the trial defense counsel proposed a substitute reasonable doubt instruction defining such a doubt as one "which would cause a reasonably prudent person to hesitate to act. . . ." in place of the "willing to act" language condemned in *United States v. Cotten,* 10 M.J. 260 (C.M.A.1981). Unlike *Cotten* however, the military judge declined to use either phrase, and, instead instructed:

A reasonable doubt is what the words imply. That is a doubt founded in reason. It's not a fanciful or ingenious doubt or conjecture, but an honest, conscientious doubt suggested by the material evidence or lack of it in the case. It's an honest misgiving generated by insufficiency of proof of guilt. Rarely, if ever, can anything be proved to an absolute or mathematical certainty. And such a burden is not required on the government here. In considering this case before you may vote for a finding of guilty, you must be convinced to a moral certainty of the accused's guilt and you must be satisfied that the evidence is such as to exclude every fair and rational hypothesis or theory of innocence. If you are no [sic] so convinced and satisfied, then it is your duty to vote for an acquittal in the case. The rule as to reasonable doubt extends to each element of an offense.

 While in some jurisdictions the usage of the term "hesitate to act" sanctioned in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) is preferred, in our opinion, it is not mandatory. *See United States v. Johnwell,* 11 M.J. 747, 752 n. 6 (A.C.M.R.1981); *United States v. Crumb,* 10 M.J. 520, 525 (A.C.M.R.1980).

Its inclusion would not have resulted in making the concept of reasonable doubt any clearer. Taken as a whole, the instruction given by the military judge correctly conveyed the concept of reasonable doubt to the court members.

We have considered the appellant's other contentions that the military judge's instructions on uncharged misconduct and credibility of witnesses were either entirely lacking or prejudicially deficient. We find that the instructions taken as a whole provided the court members with the essential elements of the charges against the accused and an accurate recapitulation of the applicable legal concepts. *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. Howard,* 18 U.S.C.M.A. 252, 39 C.M.R. 252 (1969). Accordingly, we find no error.

The remaining assignments of error have been considered and found to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge MILLER and Judge BADAMI concur.