UNITED STATES

v.

**Derrick L. CHAPLIN, 164 48 6932, Private (E–1), U. S. Marine Corps.**

NCM 79 0933.

U. S. Navy Court of Military Review.

Sentence Adjudged 9 Feb. 1979.

Decided 26 Nov. 1979.

LT Kerry T. Davidson, JAGC, USN, Appellate Defense Counsel.

CAPT Craig L. Kemmerer, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and FERRELL and DONOVAN, JJ.

DONOVAN, Judge:

This case, a companion case to *United States v. Robinson*, No. 79 0801 (NCMR 20 August 1979) and *United States v. Mills*, No. 79 0986 (NCMR _____), raises the issue of bias on the part of prospective court members and their eligibility to sit in the sentencing stage of a guilty plea case with a sufficiently open mind. We have re-examined the issue of bias as against certain types of offenders, within the context of this case, to determine if some members, at a point prior to the judge's instructions and the presentation of any evidence on the case, were inherently disqualified to serve on the panel. The members in question had stated, during *voir dire*, some views regarding punitive discharges for servicemen who steal substantial amounts of property.

Appellant providently pleaded guilty at a special court-martial before a military judge to violations of Articles 81, 121 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, 930: conspiracy to steal stereo equipment, conspiracy to housebreak, larceny of fourteen items of stereo equipment valued at over $2,000.00 and an associated unlawful entry. The planning and execution of these offenses occurred on 11 and 13 November 1978, respectively. Following his plea before the judge at an Arti-

cle 39(a), 10 U.S.C. § 839(a) session, appellant was sentenced by officer members to a bad-conduct discharge, forfeiture of $275.00 per month for 6 months and confinement at hard labor for 6 months. Appellant's pretrial agreement provided for approval of each sentence element as adjudged but for suspension of confinement over 3 months. The terms of the pretrial agreement were adhered to by the convening authority, whose action was approved by the supervisory authority.

Appellant assigns the following errors:

## I

THE MILITARY JUDGE ABUSED HIS DISCRETION BY DISALLOWING A CHALLENGE FOR CAUSE AGAINST A COURT MEMBER, CAPTAIN [Y].

## II

THE MILITARY JUDGE ABUSED HIS DISCRETION BY DISALLOWING A CHALLENGE FOR CAUSE AGAINST A COURT MEMBER, FIRST LIEUTENANT [K].

## III

THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY REFUSING TO ALLOW DEFENSE COUNSEL TO ASCERTAIN THE EXACT PERCENTAGE OF THE VOTE ON SENTENCE.

We reject the alleged errors and affirm.

*Denial of appellant's challenges for cause*

■ Errors I and II share a common legal reference. Paragraph 62f, *Manual for Courts-Martial, 1969 (Rev)*, lists grounds to challenge a court member for cause; the last ground addresses circumstances in which the facts indicate that a prospective member "should not sit . . . in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality." The military judge determines challenges and he should not be reversed on appeal, absent a clear abuse of discretion. *United States v. Wright*, 47 C.M.R. 637 (A.F.C.M.R.1973).

*See also United States v. Boyd*, 7 M.J. 282 (C.M.A.1979).

■ The issue of members' bias on sentencing has received substantial attention by the Court of Military Appeals. It has been long established that: "The real test is whether [a member] is mentally free to render an impartial finding and sentence based on the law and the evidence". *United States v. Parker*, 6 U.S.C.M.A. 274, 284–5, 19 C.M.R. 400, 410 (1955). Ten years later, the High Court noted that:

[T]he applicable criterion is the absence of bias on the part of the court members that cannot be put to one side. An accused is entitled to have members discharge their duties based on all the facts as they develop, and the law as it is announced.

*United States v. Cleveland*, 15 U.S.C.M.A. 213, 216, 35 C.M.R. 185, 188 (1965). Quoting from *Parker, supra*, the *Cleveland* Court also noted that: "An accused is entitled to have his sentence as well as his guilt adjudged by court members who are uninfluenced by predetermined and fixed ideas". *Id.* at 188.

In 1975, a case was reversed because review revealed that a member had "an inelastic attitude toward the imposition of a punitive discharge which was based solely on the nature of the crime". *United States v. Karnes*, 1 M.J. 92, 94 (C.M.A.1975). As to the impact that extenuating and mitigating evidence would have on his determination of a sentence, the member in *Karnes* had said on *voir dire* that it was not impossible that something would cause him to change his mind on the imposition of a punitive discharge but that "I just can't imagine what it would be". *Id.* at 94.

The Court of Military Appeals, in another case decided in 1975, reversed a conviction because of what it concluded was an "inelastic attitude" on the part of a member. Examination of the questions posed by trial defense counsel and the member's replies in *United States v. Cosgrove*, 1 M.J. 199 (C.M.A.1975), reveals a clever semantical selection by the defense counsel; the verbs used

in the questions he posed to the member were "feel", "should" and "indicated". The member was judged to possess an inelastic mind because he responded affirmatively to questions "Do you feel that in any case involving LSD . . . discharge should be awarded?" and "If we present no facts in mitigation . . . would your feeling be that some sort of punitive discharge is indicated?" *Id.* The member had apparently never stated that discharge was necessary, essential or mandatory for the maintenance of discipline; rather, he replied to questions addressing his "feeling" and "indicat[ions]".

Given *Karnes* and *Cosgrove*, this Court recently reversed a conviction because of *voir dire* admissions indicating a sentencing bias by a court member. In that case, however, the potential member had been questioned on the sentence in unambiguous terms employing words such as "should never be allowed to stay" and "must receive [a punitive discharge]". *United States v. Goodman*, 3 M.J. 1106 (N.C.M.R.1977).

We believe that some forums may have been too quick to find "inelasticity". The phrase "inelastic attitude" falls trippingly from the tongue; it has secured a charmed niche in legal phraseology. To be truly descriptive, inelastic should mean "rigid", "unyielding" or "inflexible". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d Ed. 1971). More recently, the Court of Military Appeals has said that "a mere predisposition to adjudge some punishment upon conviction is not, standing alone, sufficient to disqualify a member. Rather, the test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions." *United States v. McGowan*, 7 M.J. 205, 206 (C.M.A.1979). In affirming the judge's denial of the challenge, the Court distinguished *McGowan* from *Cosgrove* and *Karnes, supra*, in that McGowan's member merely favored some punishment without specifying a punitive discharge.

■ One basis of appellant's attack on the participation of Captain Y in this case was Captain Y's response that a proven thief should be retained in the service only if he is rehabilitated. (R.57, 73). The *voir dire* failed to develop a definition of the term rehabilitation. Appellant interprets Captain Y's undeveloped response to mean that he would vote a sentence including a bad-conduct discharge and then impermissibly rely on reviewing authorities to suspend it. While appellant's interpretation is one of a number which can be derived from the response of Captain Y, the trial defense counsel failed to follow up sufficiently so as to clarify what was meant by "rehabilitation". Captain Y's answer followed a general question, which defense counsel posed to most of the ten prospective members, regarding the acceptance by the member of the conventional wisdom which questions the advisability of retaining homosexuals and thieves in the Marine Corps. Rehabilitation could have been manifested to Captain Y during the subsequent extenuation and mitigation phase or been raised by indications of restitution or regret. Likewise, the judge had not yet instructed the members that a guilty plea is the first step towards rehabilitation, although defense counsel had broached that issue during *voir dire*.

■ The other basis of the alleged error in Captain Y's eligibility is that all the officers at Camp Hansen were considered subject to command influence of the camp commander, who had recently reissued a policy memo on theft prevention. *See* Appellate Exhibit III. Although most of the memo addressed techniques to minimize barracks larcenies, such as the secrecy of one's lock combination and the control of one's wallet, the memo contained the words "I . . . will do everything legally possible to punish thieves and remove them from the Marine Corps and Navy. . . ." Captain Y had no recollection at all of the memo's contents. (R.57). *Voir dire* revealed, moreover, that all the members who ultimately sat in the sentencing stage had no clear recollection of the memo: Lieutenant K, (R.65), Lieutenant D, (R.69), Lieutenant F, (R.93), and Lieutenant W, (R.94). A general or abstract bias against particular classes of offenses or persons, however, is

not necessarily disqualifying. *Cleveland, supra* at 187.

The Court of Military Appeals' most recent decision on sentencing bias was *United States v. McQueen*, 7 M.J. 281 (C.M.A. 1979). *McQueen* reasserted the vitality of *United States v. Dean*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954), and *Parker, supra,* by stating that two rules apply when an issue is raised by the defense that a challenge for cause was wrongly denied against potential court members. First, there "'must be a clear abuse of discretion in resolving the conflict before an appellate tribunal . . . will reverse a decision'", *McQueen, supra* at 281, quoting from *Dean*; secondly, the "proper test to evaluate the propriety of the judge's denial of a challenge for cause 'is whether he . . . is mentally free to render an impartial . . . sentence based on the law and the evidence'". *Id.* Appellant urges that the members of whom he complains had not only a predisposition toward some punishment but that they impermissibly stated that the punishment be, or include, a punitive discharge.

■ So viewed, this line of cases would seem to offer no leeway for the Government to demonstrate that the members retained an acceptable degree of flexibility. The facts of this case, however, establish that the members retained a residual flexibility. They did *not* indicate a punitive discharge was mandatory, essential or inevitable. Rather, the defense raised the issue and did so without the members having received the benefit of judicial instructions on sentencing and before any matters were offered in extenuation and mitigation, that is, at a time when the scales of justice were not yet permitted to be tallied, but were still sharply tilted against his client. Furthermore, the defense almost invited error on this issue since he repeatedly raised the discharge issue while never once inquiring as to confinement bias or forfeitures bias. If maximum sentencers inhabited the panel,

a more methodical search could have been made for them. Having raised the most inflammatory matter during *voir dire*, the defense immediately complained at the perception of some heat.

It is also of interest that the defense counsel did not propound his questions to the prospective members in the usual trial sequence. Here, the appellant had already pleaded guilty to two pages of charges and the members, or at least one of them, (R. 94), were caught by surprise to learn that they were summoned for sentencing only. Evaluating the members' responses for possible disqualification should include consideration of that fact and their overall backgrounds.[1] Skilled as counsel are in *voir dire* techniques and legal argument, they should recognize that these members had not yet been instructed on sentencing procedures. The record indicates that the members might very well have perceived this defense counsel's questions as a preamble to *argument* on sentencing and therefore sought to demonstrate their unwillingness, at the outset, to exclude a punitive discharge from the list of possible punishments.

■ Appellant argues the judge failed in his duty to inquire further into Captain Y's eligibility, given the defense counsel's failure to press further. The record reflects that this judge was actively in control and prudently innovative; facing challenges to the total membership, he allowed the defense a second peremptory challenge from an abundance of fairness. This judge was no mere referee. *United States v. Graves*, 1 M.J. 50 (C.M.A.1975). Indeed, the burden of maintaining the challenge rests on the challenging party. *United States v. Wright, supra.*

■ Another prospective member, Lieutenant K, was challenged for cause on three bases, (R.74): his dislike of thieves, an expressed inclination to discharge from the

---

1. The voting members' questionnaires (appellate exhibits V to VIII) reveal the following data:

| Name | Years of Service | Number Times Member of Court-Martial | | |
|------|------|---------|---------|---------|
| | | General | Special | Summary |
| LT K | 4 | 0 | 1 | 0 |
| LT D | 4 | 0 | 0 | 0 |
| LT F | .75 | 0 | 0 | 0 |
| LT W | .66 | 0 | 0 | 0 |

service those thieves who had stolen significant amounts of property and a perceived inclination to impose a discharge without consideration of matters in extenuation and mitigation. The first *voir dire* question asked of him was:

DC: Lieutenant [K] it is often said that homosexuals and thieves have no place in the Marine Corps. Do you believe there's a place for a convicted thief in the Marine Corps?

MEM: I don't think I could make a generalization on that. I'd have to take each case.

(R.65). Upon a careful reading of the applicable parts of the record, we conclude the foregoing reflects Lieutenant K's open-mindedness and that he did not bring into court an "inelastic attitude". Lieutenant K further espoused his ability to keep an open mind during the *voir dire* colloquy between himself and trial counsel. (R.67).

■ Appendix 8, *Manual for Courts-Martial, 1969 (Rev.)*, which sets procedural guidelines for courts-martial, states, in part at A8–12, that:

The TC may present to the members prior to challenges copies of the charges and specifications upon which the accused is to be arraigned if the DC consents.

The same appendix, however, at A8–13, indicates that the normal sequence is to conclude challenges before distributing to the members copies of the charges and specifications. *See also* paragraphs 62 and 65, *Manual for Courts-Martial, 1969 (Rev.)*. Although paragraph 65 does allow copies of the charges and specifications to be presented to the court members "immediately after assembly" when arraignment was held before the judge alone at an Article 39(a) session, we believe that defense counsel could have sought a delay of such a potentially prejudicial reading until after challenges were resolved. Appellant should not consent to showing prospective members detailed specifications and then charge that a disqualifying bias existed based on inclinations which sprouted from such derogatory documents considered by the prospective members before the extenuation and mitigation phase and instructions on sentencing.

The military judge sustained the defense challenges for cause to two other prospective members, both Captains. Replacement members were readily obtained the same day. (R.77). We perceive no yielding of the judge to improper pressures. Lieutenant K entertained a mere predisposition; no abuse of discretion occurred in denying his challenge for cause. If any error is considered to have resulted in the denial of Captain Y's challenge, the issue is waived, given that he was later peremptorily challenged. *United States v. Michaud*, 48 C.M.R. 379 (N.C.M.R.1973).

The record shows that the challenged members evidenced a ready capacity to yield to the evidence presented and to the judge's instructions. (R.50, 57, 65, 67). We thus find no abuse of discretion by the military judge in denying the challenges.

### *Non-disclosure of members' votes*

■ Appellant contends that the military judge prejudicially erred by refusing to allow the defense counsel to question the president of the court on the exact percentage of the members' vote on sentencing. Paragraph 76c, *Manual for Courts-Martial 1969 (Rev.)*, states, in part, that: "Only the required percentage of members who concurred in the sentence should be announced." Appellant argues that the quoted language allows for exceptions. We note, however, that elsewhere in the *Manual* this guidance is stated expressly; Appendix 8, at A8–25, sets out a special note cautioning that "only the required fraction of votes should be announced, not the actual number of members who concurred in the sentence." This practice accords with that used in announcing findings. Paragraph 74 *g* and Appendix 8, at A8–23, *Manual for Courts-Martial 1969 (Rev.)*.

The reason behind this rule seems founded on the special nature of military life. In one case, the defense challenged a lieutenant colonel because one of his lieutenants was also a member; the basis for challenge was a presumption that the senior would deprive the junior of his freedom of judgment. The Court of Military Appeals ruled that a commander-subordinate relationship

of two members is not disqualifying, *per se. United States v. Michaud, supra* at 392. *See* paragraph 62*f, Manual for Courts-Martial 1969 (Rev.)*. This is not to say that defense apprehensions of mischief in such relationships are fanciful. In our view, this is but one example why the *Manual* places such emphasis on secret written ballots. *See* paragraphs 74*d* and 76*b, Manual for Courts-Martial 1969 (Rev.)*. This practice is a proven preservative of the independence of military members as fact-finders and sentencing bodies. Secrecy insulates military members from pressures, whether by seniors, juniors or peers. The insulation extends beyond an individual trial, since the members' oath includes the duty to "not disclose or discover the vote or opinion of any particular member of the court . . . upon the findings or sentence unless required to do so in due course of law. . . ." Paragraph 114*b, Manual for Courts-Martial 1969 (Rev.)*.

Given the close association of military members in a tour of duty and, of greater importance to those making the military a career, in future tours of duty, the military rule against inquiry into voting percentages is sound. It serves a public policy which does not apply in civilian courts whose venires are usually disparate collections of strangers with no employment interdependencies.

We note that both Lieutenant K and Lieutenant D were challenged for cause, that both motions were denied and both participated in voting on sentencing with Lieutenant W and Lieutenant F. Inasmuch as three of those four votes could determine the sentence adjudged, defense's inquiry as to percentage alone would not have identified who voted against a punitive discharge even if the vote had not been unanimous. To achieve his purpose, defense counsel would need to identify, by name, Lieutenant K's vote; his purpose, to confirm the harm of a denied challenge, was therefore beyond the range of the request whose denial he here appeals. We are, for reasons noted above, satisfied that the judge did not abuse his discretion. If reasons exist to vary from the cited *Manual* provisions on

voting secrecy, they are not present in this case.

Although not cited as error, we have specifically considered the judge's denial of a challenge for cause in the case of Lieutenant D, the circumstances of which are similar to Captain Y and Lieutenant K. Applying the law to the facts, we find no abuse of discretion by the judge in his denial of the challenge to Lieutenant D.

Appellant and two co-actors planned these offenses two days before the execution. They took fourteen pieces of stereo equipment. The trial counsel properly rebutted appellant's misleading unsworn statement to the members that appellant had served mainly as just the "look out man" and clarified that appellant was, in fact, an active participant. (R.115, 120).

The findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence as approved on review below are affirmed.

Chief Judge CEDARBURG and Judge FERRELL concur.