UNITED STATES

v.

Calvin STENNIS 341 52 3924, Corporal (E–4), U. S. Marine Corps.

NMCM 81 1724.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 19 Dec. 1981.

Decided 29 Dec. 1981.

LCDR W. P. Caruthers, JAGC, USN, Appellate Defense Counsel.

LCDR John C. Vinson, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C. J., and SANDERS and MAY, JJ.

MAY, Judge:

Pursuant to his pleas at a general court-martial, appellant was found guilty of violating Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921, larceny of currency in excess of $7,500.00. Appellant elected trial before members on the sentence. On 19 December 1980, appellant was sentenced by the court to be confined at hard labor for 6 months, to forfeit $300.00 per month for 6 months, to be reduced to pay grade E–1, and to be discharged from the Marine Corps with a bad-conduct discharge. On 18 February 1981,

appellant submitted a request for a deferment of the confinement portion of his sentence. On 25 February 1981, the convening authority approved the sentence, but suspended all forfeitures in excess of $100.00 per month for the period of actual confinement with provision for automatic remission unless sooner vacated, and deferred all remaining confinement pending completion of appellate review. The convening authority also deferred the application of all forfeitures until completion of appellate review or rescission of the deferment of confinement, whichever occurred first. The suspension of the forfeitures was in accordance with the terms of a pretrial agreement.

Appellant assigns two errors:

## I

THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE REFUSED TO GRANT A CHALLENGE FOR CAUSE OF A MEMBER WHO EXPRESSED AN "INELASTIC ATTITUDE."

## II

THE CONVENING AUTHORITY HAS ILLEGALLY INCREASED THE SENTENCE BEYOND THE TERMS OF THE PRETRIAL AGREEMENT.

We find no merit in the second assignment, however, our agreement with the first assignment renders the second assignment moot.

During individual *voir dire* of one of the court members, the following exchange took place:

DC: Now, Colonel, you indicated in the [M] case that you ordinarily in other cases that you sat on, believed that the maximum punishment was appropriate in larceny type cases and we again have a larceny type case and I'd like to know at this point if you still feel that way.

MEM (LtCol [G]): Yes, I do and that didn't change anything including this morning.

DC: So, you generally believe in a significant sort of larceny that it is essential taking into account all the interests, not only the defense's but the government's interest, that a punitive discharge be awarded?

MEM (LtCol [G]): Yes.

DC: Now, turning to the confinement area in, for example the Sergeant [M] case, the maximum confinement was 85½ years as I recall and the court returned a sentence of six months confinement. So, would you say that your ordinary inclination is perhaps not so stern regarding confinement but more so regarding a punitive discharge?

MEM (LtCol [G]): No. This morning it was the two-thirds of the board that came out with the six months confinement I think it was. It's not necessarily my rule.

DC: Right. Yes, I certainly understand that, I am not asking you to disclose that either. How about—sir, from your experience, do you have a distinction between a petty larceny; like if an amount is of such a small amount of money, would that make a difference regarding your feelings on the appropriateness of a punitive discharge?

MEM (LtCol [G]): What I classify as—if you will—barracks larceny is to me the most serious regardless of the amount that was taken.

DC: Now, in this case you can take it as established because Corporal STENNIS had pled guilty of the offense and has been convicted on his plea that he took $7,500. Assuming that the evidence indicated this was not a barracks larceny, would you nevertheless feel that it was essential that a punitive discharge be awarded?

MEM (LtCol [G]): I would have to hear the case, the complete case and I again would go in with an open mind. In other words, right now I don't have a preconceived punitive discharge in mind or—I am open-minded. I would have to hear the whole case.

DC: So, I mean granted it would depend on what the defense does, but would you think based on your experience it would take a tremendous amount of evidence in the defense's favor, that is, evidence in extenuation and mitigation, to persuade you that a punitive discharge should not be adjudged and Corporal STENNIS be permitted to return to duty?

MEM (LtCol [G]): That's correct.

DC: You mentioned at one point in the previous proceeding that you used to tell your staff, I believe, sir, and I may be misquoting you, that larceny is something you feel is a serious problem and it is something that is very serious. Could you elaborate on that?

MEM (LtCol [G]): Yes. As a matter of fact, this is a whole—my feelings come out because of the fact as a commander thefts in the barracks, in the mess hall, in the company office, by any of my Marines was a no no and my Marines—any Marine in my company or in my battalion that committed that crime or was found guilty of that crime had no business in the Marine Corps. That was the whole thing and in briefing my staff that was the first thing that I would tell them, that that would not be taken lightly, theft in my command. So, that is the whole spectrum of why I feel that way just from the very beginning as platoon commander on up to battalion commander and it is essentially was what I considered the barracks type larceny theft.

DC: Okay. You include in that concept theft from a mess hall or company office, for example?

MEM (LtCol [G]): Yes, within the confines of the base, the barracks, the company office, the immediate area of the— my command or that specific area, regimental area if you will.

DC: Regimental area. So you include perhaps a larceny from a theater within the regimental area which Marines attended?

MEM (LtCol [G]): Within the base?

DC: Yes, sir.

MEM (LtCol [G]): Yes.

DC: Thank you. I have no further questions.

MJ: Captain [C]?

TC: Thank you. Sir, you indicated that you would be able to listen to the evidence with an open mind; is that correct?

MEM (LtCol [G]): That's correct.

TC: Is it conceivable for a non-barracks type of larceny, given a large amount of extenuation and mitigation, that you might not award a BCD; you might think a BCD is inappropriate in this case.

MEM (LtCol [G]): It is conceivable.

TC: Similarly, once again a non-barracks type larceny and certain types of E and M, extenuation and mitigation, it is conceivable that you might not find great amounts of confinement appropriate, perhaps a lesser amount of confinement appropriate?

MEM (LtCol [G]): Correct.

TC: I have no further questions.

DC: Sir, If I may ask one more question. Just from what little you know right now—that's essentially the charge sheet—can you say that based again on the background that you bring into court like we all have a background to bring into court with us, but do you feel you can envision a possibility that no punishment whatsoever could be imposed?

MEM (LtCol [G]): Not to that extreme, no. No punishment; that would be an extreme that I perhaps wouldn't consider, no.

DC: Thank you very much.

MJ: Sir, would it be fair to characterize you as a hard-liner where larceny is concerned?

MEM (LtCol [G]): Yes, sir.

MJ: But, is it not also true that you approach this case, the case of Corporal STENNIS, on an individual basis? Is that true?

MEM (LtCol [G]): That's correct.

MJ: So, then with him as an individual, do you have an open mind as to the ultimate conclusion of the case?

MEM (LtCol [G]): That's correct, Your Honor.

(R.33–36).

This Court is aware of the distinct advantage of measuring and evaluating the trial proceedings as presented in the static format of the trial record over the constant, real-time demands placed upon the trial judge during the ongoing, direct exchanges within the trial court arena. It is for that very reason, however, that this Court sits. There is a clear and unmistakable mandate to evaluate and monitor the trial proceedings to insure the continuance of the equitable and responsive system of military justice. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

■ Appellate government counsel, and, we are certain, the military community, do not dispute the right of an accused to a court of fair and impartial members. The issue, of course, is how do we achieve that desired result? The standard has been the subject of prior appellate opinions. The essence of these opinions is also, we believe, not objected to by anyone within our military organizations and communities. When a court member is challenged by either the accused or the government, the test is whether he or she is mentally free to render an impartial finding and sentence based on the law and the evidence. *United States v. McQueen*, 7 M.J. 281 (C.M.A.1979); *United States v. Parker*, 6 U.S.C.M.A. 274, 284–285, 19 C.M.R. 400, 410–411 (1955).

The issue of impartiality is generally ensconced in the term "elastic attitude", which, both theoretically and figuratively, reflects the desired characteristic of military court members charged with the awesome power of determining whether the government has met the necessary burden of proof, and in cases where guilt has been determined, the sentencing of criminal offenders under the Code. *United States v. Cosgrove*, 1 M.J. 199 (C.M.A.1975). We recognize that in the *voir dire* process we are evaluating and weighing the responses of laymen to oftimes convoluted and sometimes confusing questions, with the responses thereto subject to selective interpretation. We do not, without deliberation, sub-

stitute ourselves for the trial judge's application of this easy to articulate, but difficult to apply, concept.

■ The trial judge's denial of a challenge for cause must be considered, by persuasive demonstration, to be an abuse of discretion before relief will be granted. *See United States v. Deain*, 5 U.S.C.M.A. 44, 17 C.M.R. 44 (1954).

■ In examining the *voir dire* of the challenged member, it appears that this trial was the second trial Lieutenant Colonel G had served in on 19 December 1980. We recognize that no Codal bar exists to the proper detailing of a member to more than one court-martial in the course of a day. In some commands it may be a practical means of addressing the demands upon the officer members of operating units sited long distances from the courtroom facilities. We express concern with the practice because of the potential effect upon the stamina and deliberative processes of court members. Whatever the effects of any prior trial duties, however, our examination of this case is limited to the four corners of the record before us.

The record, from the initial point of Lieutenant Colonel G's responses to the question from defense counsel regarding his earlier participation in a larceny case that same day, to the final inquiry by the military judge regarding Lieutenant Colonel G's ability to approach the case with an open mind, is inconclusive. Yet the uncertainty with which we are left underscores the significance of this issue.

This uncertainty must be resolved in favor of appellant. This is not a case in which only a general predisposition toward some kind of punishment was expressed. Such general predisposition has been permitted. *United States v. McGowan*, 7 M.J. 205 (C.M.A.1979). In this case, however, there is in our opinion, a cumulative expression of inflexibility on the part of the challenged member, which renders suspect the appellant's achievement of his right to an impartial panel.

We in no way wish to intimate that Lieutenant Colonel G was a biased and unfair court member. We understand and appre-

ciate the concern of every military officer with the serious problem of larceny within a military structure. The wrongful taking of the property or funds maintained for the benefit of fellow members of the armed forces is a reprehensible act. That concern and understanding on our part for the dimensions and impact of such criminal offenses upon the morale and service allegiance of our operating forces, station, and garrison communities, however, cannot serve to divert this Court from its fundamental responsibility.

We find in this case, that Lieutenant Colonel G expressed during the voir dire examination, an inelastic view toward sentencing as related to the particular offense before the court. We further find that the defense counsel's challenge for cause should have been granted, and that appellant was materially prejudiced by the failure of the military judge to grant that challenge.

The decision of the trial court as to the sentence is reversed; the findings are affirmed. The record is returned to the Judge Advocate General for transmittal to an appropriate convening authority. A rehearing on the sentence may be ordered by the convening authority so designated.

Chief Judge CEDARBURG and Judge SANDERS concur.