### UNITED STATES

v.

**Leroy HERIOT, 250 86 2914, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 82 4172.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 2 March 1982.

Decided 31 May 1983.

LCDR Georgia L. Winstead, JAGC, USNR, Appellate Defense Counsel.

LT Burke M. Wong, JAGC, USNR, Appellate Defense Counsel.

LCDR W.A. Dorsey, JAGC, USNR, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and GARVIN, JJ.

BYRNE, Judge:

Staff Sergeant Heriot, USMC, the appellant, was convicted, contrary to his pleas, by officer members of a special court-martial, of the possession, transfer, and sale of 14.65 grams of marijuana on 14 August 1981 and the possession of an undetermined amount of marijuana on 9 November 1981. The court sentenced Staff Sergeant Heriot (an E–6) to be confined at hard labor for three months, to be reduced to pay grade E–1, and to be discharged from the United States Marine Corps with a bad-conduct discharge. The convening authority approved the sentence as adjudged.

1. In response to the summary assignment of error, we conclude that the convening authority had not "studied" ALMAR 246/81 nor received briefings concerning its contents before he referred the appellant's case to trial, although he had "looked it over" prior to that date. R. 42. The case was referred to trial on 16 December 1981; the ALMAR did not take effect until 1 February 1982. *Id.* The ALMAR had no impact upon the convening authority's decision to refer the appellant's case to a special court-

Appellate defense counsel has asserted two assignments of error. We have summarily resolved the second assignment of error on a factual basis.[1] We shall now resolve the first assignment of error.

### A. *The Facts*

Trial defense counsel conducted an extensive *voir dire* of members. Our issue centers upon the defense challenge for cause against one member: Captain D.

Captain D was, at the time of trial, a 37-year-old Marine officer who had come up from the ranks, reaching the same enlisted rank as Staff Sergeant Heriot, before he became an officer.

His responses during *voir dire* warrant our conclusion that Captain D was a court-martial member who, by virtue of his age, education, training, prior experience, length of service, and judicial temperament was best-qualified to sit on the appellant's court-martial. *See* R. 100–109.

We note that Captain D did not believe a bad-conduct discharge or confinement at hard labor was required by the nature of the offenses themselves, but that those issues should only be resolved after "all the evidence has been heard." R. 109.

But, if Staff Sergeant Heriot were found guilty of selling drugs, Captain D expressed the firm belief that the staff sergeant must be reduced one pay grade, no matter what evidence was presented in extenuation and mitigation. We pick up the record of trial shortly after he expressed this viewpoint:

Questions by the military judge:

Q. On the issue previously you were asked or we were talking about a reduction. You indicated that you thought a reduction should necessarily result in this case. Why do you think that?

martial. R. 55. We agree with the factual findings and reasoning of the military judge expressed when he denied the defense motion to dismiss on this issue. R. 57–59. We also note that the ALMAR did not influence the convening authority's review of the record of trial. *See* R. 54.

We have also considered the issues raised in the appellate rights statement, and consider them to be without merit.

A. Because, as a Marine Staff NCO, the issue of drugs is not allowed, it can't be tolerated, and senior Staff NCO's have to set the example. The junior people look up to Staff NCO's and if he's found guilty of the drug charges, then, by all means, he must be reduced.

Q. All right, and do you have any fixed idea as to how far down he'd have to be reduced?

A. No, sir.

Q. I take it, what you're—are you saying, in effect, that if he were found guilty of one or more of these offenses that you feel he just wouldn't be the type of person that should wear that rank?

A. That's true. He shouldn't be a Staff NCO in the Marine Corps.

Q. Is that because you think he's indicated he's a poor leader?

A. No, sir, not a poor leader but just the poor judgment, the example that he sets by wearing the rank of a Staff NCO.

Q. All right, so, it's what, judgment, the question of the example he should set? You're saying that basically then you think he would have been an improper example?

A. Yes.

Q. What, to lower ranking individuals?

A. True, yes.

Thereafter, the following transpired:

Questions by individual military counsel:

Q. What you're saying then is, after everything is considered, if you found him guilty, you would not vote for anything less than, what, Sergeant, Corporal? Do you think you could keep him an NCO or do you think it would necessitate going below the NCO rank?

A. Possibly going below the NCO rank.

Q. Possibly but, in your mind, no way, absolutely fixed in your mind, would he be a Staff Sergeant?

A. That's true.

Captain D was challenged for cause by the individual military counsel. The military judge denied the challenge with the following commentary:

MJ: All right, well, I think that certainly his responses fairly were that he had no firm idea as to how far he'd reduce the accused but certainly his response was that the accused would lose one stripe. I think that he appeared to be somewhat flexible as to whether two or more would go but, certainly, one would. I'm quite familiar with the cases on predisposition towards a certain punishment. The vast majority of those cases, of course, have dealt with the more serious forms of punishment, that is, whether a person would just automatically award a bad-conduct discharge or a significant period of confinement. Frankly, I have yet to see one where we're getting down to a predisposition towards such a minor punishment for a serious offense. I think that, if we look at some of the language of these decisions, it's extremely loose. Conceivably, if you look at these decisions, in a General Court-Martial for first degree murder, if a member said that he'd give a $5.00 forfeiture, he'd somehow, and he'd never come down from that, he's somehow challengable. I think there's a rule of reason that has to come in here. There's also a point where if members are properly chosen and are properly selected under Article 25 and (sic) reasonable leadership potential that there's going to be a certain amount of inflexibility, which I think can be permissible, as long as it's a relatively minor inflexibility dealing with a minor form of punishment in relation to the offenses charged. In this case, the only inflexibility on his part seems to be that the Sergeant, at the very least, would walk out with no—conceivably, with no BCD, no confinement at hard labor, no forfeitures whatsoever—he was flexible in that regard—however, he might walk out, upon conviction, losing one stripe. Frankly, the court finds that that is not an unreasonable view on the part of the court member and the challenge for cause on that ground is denied.

Now, I'm aware of the case law and, frankly, I do not believe that I know of a case which is specifically on this point of this minor a degree of inflexibility and

frankly I'm going to give, conceivably, if there's a conviction, I'm going to give the appellate authorities the opportunity to look at this fact situation, if, indeed, it does occur.

So, that challenge for cause is denied.

The staff judge advocate, in his post-trial advice to the convening authority, addressed the issue as follows:

In this instance, the military judge applied an approach under which a member, otherwise properly selected, would be permitted a certain measure of inflexibility in a situation, as here, in which the predisposition pertained to the award of a minor punishment for a serious offense, an unspecified reduction in rate for possession, transfer and sale of marijuana.

In my opinion, the reasoning of the military judge is persuasive. Given the offenses alleged against the accused, a predisposition on the part of one member toward one minor aspect of a possible sentence was not prejudicial to the substantial rights of the accused so as to have required that the challenge be granted or that remedial action be taken at this juncture. I do not believe the military judge abused his discretion in denying the challenge.

In his comments on this post-trial advice, the trial defense counsel commented that "the review incorrectly characterizes reduction in rate as a minor punishment, and infers that, because of the claimed 'minor' nature of punishment to reduction in rate, such predisposition or inflexibility is allowable." DC ltr of 11 Jun 1982 to CNTT. The staff judge advocate responded that Captain D's "indication that a Staff Sergeant convicted of serious drug offense shows poor judgment and should be reduced is not so inflexible as to prejudice the substantial rights of the accused." SJA ltr of 30 Jun 1982 to CNTT.

We conclude, as a matter of fact, that Captain D had an inelastic attitude as to one portion of the sentence in that he would have imposed a reduction of one pay grade upon Staff Sergeant Heriot if he was convicted of selling drugs.

### B. The Issue

DID THE MILITARY JUDGE ABUSE HIS DISCRETION WHEN HE DENIED THE DEFENSE CHALLENGE FOR CAUSE AGAINST CAPT D?

We hold that the military judge did not abuse his discretion in denying the challenge for cause.

### C. Origin and Development

1. *Military Law Prior to the UCMJ and MCM, 1951*

Prior to the effective date of the *Manual for Courts-Martial, United States, 1951 (MCM, 1951)*, mitigation of court-martial sentences was the exclusive province of reviewing authorities. Naval service members were to "adjudge a sentence commensurate with the offense proved" and "should not presume upon the prerogative of the reviewing authority in exercising clemency. Such action would be, in effect, a reflection upon the judgment of the reviewing authority." [2] In the Army, it was emphatically stated that a "court may not trench directly or indirectly upon the *remitting or mitigating power* of the commander" and he may disregard a "sentence which transcends the authority of the court." [3]

2. *1951–1969*

The *MCM, 1951*, however, specifically *required* members to consider matters in mitigation in assessing an appropriate sentence.[4]

Traditional practices die hard, and we believe military lawyers were concerned that a traditional practice had developed into a philosophic approach to sentencing by some senior members who were continuing to rely upon the convening authority for

---

2. *Naval Courts and Boards,* section 372 (1937) (*NCB*).

3. Winthrop, *Military Law and Precedents,* 402–03 (2nd ed. 1920) (*Winthrop*).

4. *See Manual for Courts-Martial, United States, 1951,* paras. 75c, 76a *(MCM, 1951).*

any mitigation exercised in a particular case, rather than seriously considering such information in imposing a sentence.[5] We also note that, prior to 1951, *the members,* except for the challenged member, determined, by vote, whether to sustain a challenge for cause.[6] This prior practice was incorporated into the UCMJ,[7] and the *MCM, 1951* implemented it.[8]

Because the members were still voting on challenges for cause against each other, the appellate courts were concerned that challenged members having this philosophic approach would be protected from excusal by their fellow members' votes.[9] The presiding officer in all special courts-martial at this time was a relatively senior officer whose opinions as to the responsibilities of members in sentencing carried great weight with the other members primarily because he was the source of instructions as to the law applicable to the proceedings.[10] In such cases, the task of all reviewing authorities became very difficult indeed, for they could not be assured that the members were properly considering mitigating matters when they deliberated on the sentence.

The *MCM, 1951,* in line with its predecessors,[11] and successors,[12] was very emphatic in recognizing challenges for cause against members who had "formed or expressed a positive and definite opinion as to the guilt or innocence of the accused as to any offense charged."[13] The *MCM, 1951,* and its successors, however, did *not* state that a positive and definite opinion as to the *sentence* to be imposed, *if* an accused should be found guilty of the offense(s) charged, was a ground for challenge. Appellate court decisions were to address this issue.

The first relevant published decision was by an Air Force board of review. It held that a president of a special court-martial abused his discretion when he denied trial defense counsel the opportunity to question a member as to whether he felt "that if an accused has committed an offense and has three (3) previous convictions and a Bad-Conduct Discharge is authorized you should give him a Bad-Conduct Discharge regardless of mitigation?" The board of review stated this inquiry "as to any possible bias on the part of the member which would affect him in arriving at a fair determination of the sentence to be adjudged upon conviction was proper...."[14]

In *United States v. Parker,* 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955), defense counsel asked two specific questions of a member: 1) whether the member had ever served on a court in which there was a policy to give the maximum sentence and leave matters of mitigation to the reviewing authority; and 2) whether the member would require evidence of aggravation and prior convictions before arriving at a maximum sentence. Neither specific question was permitted by the law officer because the member had already stated he would arrive at a sentence based upon the admitted evidence. Although the majority considered the questions "hypothetical," and improper, Chief Judge Quinn, in concurring, stated:

> An accused is entitled to have his sentence as well as his guilt adjudged by court members who are uninfluenced by predetermined and fixed ideas. *United*

---

5. *Cf., United States v. Parker,* 6 U.S.C.M.A. 274, 283, 19 C.M.R. 400, 409 (1955).

6. *NCB,* section 391; *MCM, 1949,* para. 58f.

7. UCMJ, Art. 41(a), 10 U.S.C. § 841(a).

8. *MCM, 1951,* para. 62h.

9. *See United States v. Cleveland,* 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965); *United States v. Parker, supra,* at 409 and Chief Judge Quinn's concurring opinion; Everett, *Military Justice in the Armed Forces of the United States* 178 (1956).

10. *MCM, 1951,* para. 40b(2).

11. *Manual for Courts-Martial, U.S. Army, 1949,* para. 58e (MCM, 1949); *NCB,* section 388.

12. *Manual for Courts-Martial, United States, 1969 (Revised edition),* para. 62f (MCM, 1969).

13. *MCM, 1951,* para. 62f.

14. *United States v. Irwin,* 10 C.M.R. 625, 626 (A.F.B.R.1953).

*States v. Deain,* 5 USCMA 44, 17 CMR 44. Consequently, the defense counsel should have been allowed to inquire whether the court members had served on a court which followed a deliberate policy of imposing maximum sentences. The mere statement by the court member that he would impose a sentence on the basis of the evidence presented in the case should not have precluded further questioning as to his possible bias. However, the accused waived his right to attack the law officer's ruling....[15]

Chief Judge Quinn's concurring opinion relied for authority on *United States v. Deain, supra.* But *Deain* was specifically concerned with bias as to *findings,* not as to the *sentence.* The Court in *Deain* noted that "Admiral Ruddock's [the president's] testimony incontrovertibly demonstrates a fixed and deepseated disposition to give less than full effect to the *presumption of innocence.* A disposition of that kind seriously impairs a juror in his impartiality and disqualifies him from sitting in judgment on the case." [Emphasis supplied.][16] Also noted were the admiral's "fixed and abiding," but erroneous, personal formulae for determining *guilt* in desertion cases.[17] *Deain* reflected a situation that tended to rise during the early years of the UCMJ. The complete dominance of the president of the court over the proceedings vis-a-vis the law officer does not occur today. This early-UCMJ situation reflected vestiges of the practice in existence prior to the inception of the UCMJ.[18]

Shortly after *Parker,* an Air Force board of review held that several general court-martial members erred in not voting to sustain a challenge for cause against another member who entertained a predeter-

mined and fixed idea that, upon conviction of desertion, regardless of the evidence in extenuation and mitigation, "an accused should be sentenced, in part, to a bad-conduct discharge or dishonorable discharge." [19] It is noteworthy that two other members, who voted on this challenge, were also challenged for cause by the defense on the same ground.[20] Citing *Irwin, Deain, Parker,* and some other decisions which were, at best, tangentially relevant,[21] the board of review stated:

> The test of a member's qualifications to sit on a trial is whether he is "mentally free to render an impartial finding *and sentence* based on the law and the evidence." ... Clearly an accused is entitled to have his sentence as well as his guilt determined by court members who are uninfluenced by predetermined and fixed ideas....[22]

But, the United States Court of Military Appeals *majority* opinion in *Parker* stated that the law officer *was correct in precluding further questioning on sentence* and noted:

> These questions dealt solely with the sentence and we see no reason why a court member should be required to state specifically what he would consider in arriving at an appropriate sentence before he knew the facts to be developed... That is asking a member to answer a hypothetical question with many essentials missing. A maximum sentence is a legal sentence and whether it is appropriate cannot be ascertained by isolating individual ingredients.[23]

It was not until 1965 that the United States Court of Military Appeals specifically addressed the issue. In *United States v.*

---

15. *United States v. Parker, supra* at 411.

16. *United States v. Deain,* 5 U.S.C.M.A. 44, 51, 17 C.M.R. 44, 51 (1954).

17. *Id.,* 52.

18. *See, e.g., NCB,* section 400; *Winthrop,* 170–71, 194–99; *MCM, 1949,* paras. 39, 40.

19. *United States v. Watkins,* 20 C.M.R. 750, 753 (A.F.B.R.1955).

20. *Id.*

21. Paragraphs 62*f*(13) and 76*a, MCM, 1951,* were also cited by the board of review.

22. The quote from *Parker* is dictum. *See United States v. Parker, supra,* 410–11.

23. *United States v. Parker, supra,* at 409.

*Cleveland,* 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965), the accused was tried by general court-martial for larceny, sodomy, and false swearing. Three members were challenged for cause. The first member stated he believed that if the accused were convicted of heterosexual sodomy with a prostitute he should be discharged. The law officer advised the members that he joined in the challenge for cause, but the members did not sustain the challenge against their fellow member. Thereafter, two other members, including the president, stated that they believed that failing to vote for a discharge would be inconsistent with their duties as officers. They were individually challenged for cause, but these challenges for cause were not sustained by the other members. Only the member being challenged at the time and the law officer did not participate in the voting.[24] Two of the members were peremptorily challenged, but the president, whose challenge for cause had been rejected by the other members, remained. The United States Court of Military Appeals, noting that the questions propounded to the members were proper, *held* that the members abused their discretion in refusing to sustain the challenges for cause because "the members involved harbored an inelastic attitude concerning a discharge, rendering them unable to sit impartially as to sentence."[25] The United States Court of Military Appeals in *Cleveland* stated its concerns with the practice of members voting on challenges:

> On prior occasions when discussing the subject of challenges for cause, this Court has stated its belief that it would be preferable for the same to be passed upon by the law officer of a general court rather than the court members. . . . Indeed we have recommended enactment of legislation to that effect. . . . Consider-

ing the facts of the present case, we strongly reaffirm that recommendation. Nonetheless, we recognize that we are powerless ourselves to alter the present procedure. Numerous prior decisions in this area make certain principles clear. There can be no doubt under the Code and the Manual that, in military law, challenges for cause must be resolved by the court itself, voting in secret session with the challenged member excluded. Moreover, this is so notwithstanding that such process results—as it did in fact in the case at bar—in the somewhat anomalous situation whereby court members challenged on substantially the same ground are permitted to ballot on the challenges against their fellow members, even though disqualified to vote on their own. . . .[26]

The military trial defense bar was quick to take advantage of *Cleveland.* They were encouraged to do so by a law review article that suggested the following question of members on *voir dire* relating to sentence:

> Would you feel obligated, regardless of extenuation and mitigation, to adjudge a discharge because of the nature of the offense alleged?[27]

### 3. *1969–1979*

The Military Justice Act of 1968, as implemented by the *Manual for Courts-Martial, United States, 1969 (Revised edition),* made many significant changes that pertain to this issue. Some of the practical results were: the accused is now invariably represented by a military lawyer in special courts-martial;[28] the law officer was redesignated a military judge and now invariably presides at all courts-martial;[29] and the accused now has the option of selecting trial

---

24. *MCM, 1951,* para. 62*h.*

25. *United States v. Cleveland,* 15 U.S.C.M.A. 213, 217, 35 C.M.R. 185, 189 (1965).

26. *Id.,* at 187.

27. R. Holdaway, *Voir Dire—A Neglected Tool of Advocacy,* 40 Mil.L.Rev. 1, 31 (1968).

28. UCMJ, Art. 27, 10 U.S.C. § 827.

29. *Cf.,* UCMJ, Art. 26, 10 U.S.C. § 826; *MCM, 1969,* para. 15*b.* Although it is possible for a president to preside in non-BCD special courts-martial, in practice this situation is a very rare occurrence.

by members or by military judge alone.[30] The military judge's powers were expanded. He was given more authority.[31]

The most significant amendments, insofar as they relate to the issue before this Court, were to Articles 41 and 51, 10 U.S.C. §§ 841, 851, of the UCMJ. As a direct result of these amendments, the military judge, and not the members, now rules upon challenges for cause.

The case law, however, did not perceptibly change during this decade.[32]

### 4. 1979–Present

Commencing with *United States v. McGowan*, 7 M.J. 205 (C.M.A.1979), military appellate courts began to reflect reservations regarding this issue. In the relatively short span of 3 years, the appellate courts:

1. Stated that "a mere predisposition to adjudge some punishment upon conviction is not, standing alone, sufficient to disqualify a member."[33]

2. Held that the test to determine if a military judge abused his or her discretion in denying a challenge for cause is a "clear abuse of discretion."[34]

3. Held that a member is not disqualified because s/he is opposed to, or abhors, some crimes more than others.[35]

4. Held that the fact that a member intuitively feels a conviction for specified offenses justifies a particular kind of punishment is not necessarily disqualifying.[36]

5. Held that the fact that a member expressed the view that a proven thief should be retained in the military only if rehabilitated was not disqualifying because "rehabilitation" could have been manifested during presentencing.[37]

6. Noted the "clever semantical selection" of verbs used by trial defense counsel in *voir dire* in seeking to establish grounds to challenge members (*e.g.,* "feel," "should," "indicated").[38]

7. Criticized prior appellate court decisions as misinterpreting "inelastic" insofar as it pertains to the issue; noting "inelastic" means "rigid," "unyielding," and "inflexible."[39]

8. Noted that, in making a challenge for cause, "the defense . . . did so without the members having received the benefit of judicial instructions on sentencing and before any matters were offered in extenuation and mitigation, that is, at a time when the scales of justice were not yet permitted to be tallied, but were still sharply tilted against his client."[40]

9. Held that a "residual flexibility" in which there was no indication the members believed a punitive discharge was "mandatory, essential, or inevitable" was sufficient to retain a member.[41]

10. Noted the merit of "honest" responses from court members.[42]

---

**30.** UCMJ, Art. 16, 10 U.S.C. § 816.

**31.** The United States Court of Military Appeals began seeking to confer more powers on the law officer early in its history. *See e.g.,* R. Miller, *Who made the Law Officer a "Federal Judge"?* 4 Mil.L.Rev. 39, 66 (1959).

**32.** *See, e.g., United States v. Karnes,* 1 M.J. 92 (C.M.A.1975); *United States v. Cosgrove,* 1 M.J. 199 (C.M.A.1975); *United States v. Goodman,* 3 M.J. 1106 (N.C.M.R.1977). *But see United States v. Smack,* No. 78 0658 (N.C.M.R. 30 November 1978).

**33.** *United States v. McGowan,* 7 M.J. 205 (C.M.A.1979). *See also United States v. Tippit,* 9 M.J. 106 (C.M.A.1980).

**34.** *United States v. McQueen,* 7 M.J. 281 (C.M.A.1979); *United States v. Boyd,* 7 M.J. 282 (C.M.A.1979).

**35.** *United States v. Findlay,* 7 M.J. 931 (A.C.M.R.1979).

**36.** *United States v. Williams,* 8 M.J. 506 (A.F.C.M.R.1979).

**37.** *United States v. Chaplin,* 8 M.J. 621 (N.C.M.R.1979).

**38.** *Id.* at 623–24.

**39.** *Id.* at 624.

**40.** *Id.* at 625.

**41.** *Id.*

**42.** *United States v. Fite,* No. 78 0581 (N.C.M.R. 24 January 1979).

11. Stated that unless it is apparent that a court member has a "closed mind" about the sentence, a military judge's decision to deny a challenge for cause should not be reversed.[43]

12. Noted that the law does not entitle an accused to the presence of court members who would be willing to serve with a convicted murderer.[44]

13. Noted that a member who expressed reservations about the accused's remaining in the Army but who also stated he needed additional information as to sentence, did not have an inelastic attitude regarding sentence.[45]

14. Noted that while a member would not give great weight to evidence of intoxication in determining a sentence, neither the Government nor the accused is guaranteed a member which will give his evidence the greatest weight.[46]

Despite these qualifying statements made by military appellate courts since 1979, they have claimed to have acted within the context of this principle:

... if a court member's *voir dire* answers reflect "an inelastic attitude toward the imposition of a punitive discharge which was based solely on the nature of the crime" ... the military judge is bound to sustain a challenge for cause to this member. "However, a mere predisposition to adjudge some punishment upon conviction is not, standing alone, sufficient to disqualify a member. Rather, the test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions."[47]

On a more practical scale the results of decisions in this particular area indicate a significant trend. From 1951 to 1978 the military appellate courts found error in 16 of 21 cases because challenged members were not excluded from sitting. But, from 1979 to 1983, 12 of 14 decisions found no clear abuse of discretion on the part of military judges in denying challenges for cause.[48]

In practice what has occurred is that the appellate courts have begun to actually apply, instead of give lipservice to, another basic principle they have often expressed in conjunction with the issue:

There must be a clear abuse of discretion in resolving the conflict before an appellate tribunal, which lacks the power to reweigh the facts, will reverse a decision.[49]

D. *The "Inflexible Attitude" Principle Is Not Inflexible*

No military appellate decision has *held* that the "inflexible attitude" principle as to the sentence is itself inflexible. This ground for challenge falls under subparagraph 62f(13) of the *MCM, 1969*[50] and, consequently, is not one of those grounds that mandate a member be excused.[51] Since 1979, the military appellate courts have been struggling to adhere to the principle insofar as it applies to punitive discharges and have, as we have described, modified perimeter aspects of the principle. Such a process is not unusual:

When an adherent of a systematic faith is brought continuously in touch with influences and exposed to desires inconsistent with that faith, a process of unconscious cerebration may take place, by which a growing store of hostile mental inclinations may accumulate, strongly motivating action and decision, but seldom

---

**43.** *United States v. Tippit, supra.*

**44.** *United States v. Davenport,* 14 M.J. 547 (A.C.M.R.1982).

**45.** *United States v. Witherspoon,* 14 M.J. 781 (A.C.M.R.1982).

**46.** *United States v. McLeskey,* 15 M.J. 565 (A.F.C.M.R.1982).

**47.** *United States v. Tippit, supra* at 107.

**48.** There may be other cases we have inadvertently omitted in our survey.

**49.** *United States v. Boyd, supra.*

**50.** *United States v. Watkins, supra.*

**51.** *MCM, 1969,* para. 62c; *see also* UCMJ, Art. 36, 10 U.S.C. § 836.

emerging clearly into consciousness. In the meantime the formulas of the old faith are retained and repeated by force of habit, until one day the realization comes that conduct and sympathies and fundamental desires have become so inconsistent with the logical framework that it must be discarded. Then begins the task of building up and rationalizing a new faith.[52]

We have seen that the practical underpinnings for application of a basic principle relating to ineligibility to sit on the sentence are no longer present as factors to weigh in the decision-making process. The procedure whereby members vote on other members' eligibility to sit is no longer a consideration. Retirement has now accounted for the disappearance of members who could not philosophically consider mitigation in their assessment of an appropriate sentence. Consequently, the major reasons for application of findings principles to the sentence no longer exists. It is time to look at the issues again.

Evidence of mitigation, extenuation, and aggravation are *not* the reasons an accused is tried. An accused is tried to determine his or her guilt of one or more offenses and, if found guilty, to assess an appropriate sentence *for those offenses of which the accused has been convicted.* Extenuation, mitigation, and aggravation should, of course, be considerations in assessing an appropriate sentence, but the punishment must "fit" the crime. Members who are effectively told that they may not conclude that an individual convicted of a serious crime deserves some sort of punishment for the serious offense alone, have been forced to discount the serious nature of the offense by operation of law rather than upon merit. As a practical matter, can we, for example, say with a straight face that a mass murderer, if convicted of many heinous crimes, may not be tried by a member who would automatically award reduction of one pay grade based on the nature of the offenses

alone? The honest member, who is otherwise qualified, but who would have assessed an appropriate sentence upon all the evidence, including the offenses upon which the accused was convicted, is considered disqualified to sit.

Many of the remaining members will find themselves faced with a serious moral dilemma: how to award an appropriate sentence once they have made assurances that they will not treat the offense itself with the gravity it deserves. Is it any wonder why members' sentences are often unpredictable and illogical and fail to fit the punishment to the crime?

We have already noted that Captain D's qualifications to sit as a member were precisely in line with Article 25(d)(2) of the UCMJ. A former staff sergeant, he *knew* the high standards expected of a staff sergeant in the United States Marine Corps. His responses reflect an accurate understanding of the requirements of leadership-by-example expected of a staff sergeant in order that good order and high morale may be retained and the military may field effective, disciplined, fighting forces. Selling drugs is a serious offense in the military[53] and warrants the imposition of some punishment based on the nature of the offense alone.

### E. *Prior Appellate Opinions Distinguished*

Factually, this is a case of first impression as we can locate no other published decision where a member was only inflexible as to sentence insofar as a one pay grade reduction is concerned.

We distinguish the following cases, all of which were concerned with inflexibility regarding the imposition of a punitive discharge: *United States v. Cantu,* 15 M.J. 534 (A.F.C.M.R.1982); *United States v. Witherspoon,* 14 M.J. 781 (A.C.M.R.1982); *United States v. Davenport,* 14 M.J. 547 (A.C.M.R. 1982); *United States v. Huggins,* 14 M.J.

---

**52.** Quoted with approval in *Selected Writings of Benjamin Nathan Cardozo,* 183 (M. Hall ed. 1947).

**53.** *United States v. Harvey,* 12 M.J. 626 (N.M. C.M.R.1981).

534 (A.C.M.R.1982); *United States v. Lenoir,* 13 M.J. 452 (C.M.A.1982); *United States v. Stennis,* 12 M.J. 813 (N.M.C.M.R. 1981); *United States v. Tippit,* 9 M.J. 106 (C.M.A.1980); *United States v. Fite,* No. 78 0581 (N.C.M.R. 24 January 1979); *United States v. Chaplin,* 8 M.J. 621 (N.C.M.R. 1979); *United States v. Williams,* 8 M.J. 506 (A.F.C.M.R.1979); *United States v. Smack,* No. 78 0658 (N.C.M.R. 30 November 1978); *United States v. Walker,* No. 77 1570 (N.C. M.R. 31 May 1978); *United States v. Kriesel,* No. 77 0926 (N.C.M.R. 27 February 1978); *United States v. Goodman,* 3 M.J. 1106 (N.C.M.R.1977); *United States v. Sumter,* 1 M.J. 588 (A.C.M.R.1975); *United States v. Cosgrove,* 1 M.J. 199 (C.M.A.1975); *United States v. Bann,* 50 C.M.R. 384 (A.F. C.M.R.1975); *United States v. Karnes,* 1 M.J. 92 (C.M.A.1975); *United States v. Kelly,* 42 C.M.R. 817 (A.C.M.R.1970); *United States v. Fort,* 16 U.S.C.M.A. 86, 36 C.M.R. 242 (1966); *United States v. Cleveland,* 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965); *United States v. Chavis,* 32 C.M.R. 645 (A.B.R. 1963); *United States v. Lynch,* 9 U.S.C. M.A. 523, 26 C.M.R. 303 (1958); *United States v. Ratty,* 27 C.M.R. 905 (C.G.B.R. 1958); *United States v. Swanson,* 25 C.M.R. 832 (A.F.B.R.1958); *United States v. Page,* 23 C.M.R. 746 (A.F.B.R.1956); *United States v. Watkins,* 20 C.M.R. 750 (A.F.B.R. 1955); *United States v. Parker,* 6 U.S.C. M.A. 274, 19 C.M.R. 400 (1955); and *United States v. Irwin,* 10 C.M.R. 625 (A.F.B.R. 1953).

When one studies the development of the case law, it is apparent that the standards for determining a member's qualifications to decide findings are not as stringent when determining the member's qualifications to adjudge the sentence.[54] Further, as we have noted previously, the motivating factors underlying the initial adoption of the same standard have disappeared. We, therefore, distinguish those cases falling within paragraph 62f(10) of the *MCM, 1969,* that is, those cases that concern themselves with members' fixed attitudes towards the *findings* vice sentence. Decisions such as *United States v. Deain,* 5 U.S.C. M.A. 44, 17 C.M.R. 44 (1954); *United States v. Carver,* 6 U.S.C.M.A. 258, 19 C.M.R. 384 (1955); and *United States v. Wright,* 47 C.M.R. 637 (A.F.C.M.R.1973), are herewith distinguished.

*United States v. Tucker,* 16 U.S.C.M.A. 318, 36 C.M.R. 474 (1966), which concerns itself with members' views on confinement at hard labor, is also distinguished.

### F. Conclusions and Commentary

■ We hold that an inflexible attitude in favor of a certain punishment, based upon the offense alone, is not an inflexible standard in itself, but must be tested to determine if the military judge clearly abused his discretion in denying a challenge on that basis. In the absence of such a clear abuse of discretion, the military judge's determination will be sustained upon review.

■ We hold that the military judge did not abuse his discretion when he denied a challenge for cause against a member who had an inelastic attitude in favor of the imposition of a reduction of one pay grade in the event a senior noncommissioned officer was convicted of a serious military offense.

We note there may be a procedural solution to resolution of these situations, which was suggested by the United States Court of Military Appeals long ago:

These questions dealt solely with the sentence and we see no reason why a court member should be required to state specifically what he would consider in arriving at an appropriate sentence before he knew the facts to be developed.... That is asking a member to answer a hypothetical question with many essentials missing. A maximum sentence is a legal sentence and whether it is appropriate cannot be ascertained by isolating individual ingredients.[55]

---

54. *See, e.g. United States v. McGowan, supra; United States v. Tippit, supra.*

55. *United States v. Parker, supra* at 409. *See also United States v. Chaplin, supra* at 625.

The findings and sentence as approved below are affirmed.

Judge GARVIN concurs.

GLADIS, Senior Judge (dissenting):

The law is clear that if a member has an inelastic attitude towards the imposition of a particular punishment and will not yield to the evidence presented, the military judge must sustain a challenge for cause to the member. *United States v. Tippit,* 9 M.J. 106 (C.M.A.1980); *United States v. McGowan,* 7 M.J. 205 (C.M.A.1979). The inelastic attitude need not be a predisposition to adjudge a punitive discharge. *See United States v. Tucker,* 16 U.S.C.M.A. 318, 36 C.M.R. 474 (1966) (predisposition to adjudge confinement). In its scholarly analysis the majority makes a convincing case for discarding this rule in cases such as the one before us. It is not our function, however, to discard rules enunciated by the Court of Military Appeals, although they may be unwise. That is the task of the Court of Military Appeals. Therefore, I dissent.