UNITED STATES, Appellee,

v.

Private E–2 Eddie L. INMAN,
259–19–0969, United States
Army, Appellant.

CM 444896.

U.S. Army Court of Military Review.

24 June 1985.

Captain Audrey H. Liebross, JAGC, argued the cause for appellant. With her on the brief were Lieutenant Colonel William

P. Heaston, JAGC, and Major Edwin D. Selby, JAGC.

Captain Laura G. Poston, JAGC, argued the cause for appellee. With her on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, and Major Patrick M. Flachs, JAGC.

Before SUTER, YAWN and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

WALCZAK, Judge:

A general court-martial composed of officer and enlisted members tried appellant for three incidents of rape, a forcible sodomy, and a burglary in violation of Articles 120, 125, and 129, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, and 929 (1982). Contrary to his pleas, appellant was convicted of two incidents of rape, unlawful touching, and unlawful entry. The court-martial sentenced him to a dishonorable discharge, confinement at hard labor for 20 years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. The convening authority approved the findings and sentence.

On appeal appellant contends the military judge erred by denying the defense's challenges for cause against two court members. Appellant contends that the responses from the two court members during *voir dire* indicate they were biased and, thus, were disqualified from sitting as members. Appellant argues that the responses of one member, Captain (CPT) W, indicate that he was unwilling to follow the law in determining whether the offense of rape had occurred. Appellant further argues that the second member, Second Lieutenant (2LT) B, was presumptively biased since she had been the victim of an attempted rape. We find no merit to these arguments.

I. The Challenge Against CPT W

■ After defense counsel had questioned the court members concerning their expectations of how a woman should manifest her objection to sexual intercourse, the military judge instructed the court as to the elements of rape and thoroughly explained that the act of sexual intercourse must have been by force and without the victim's consent. The military judge explained that mere verbal protestations, coupled with a pretense of resistance, do not demonstrate a lack of consent by the victim. The military judge asked the court members whether they understood his instructions. Captain W replied, "If a 'no' was given, then I think that is legally sufficient." The military judge repeated the instruction on lack of consent and asked, "Can you follow that, CPT W?" Captain W responded, "Yes, sir, I can." Later, defense counsel asked CPT W if he had any reservations regarding the consent instruction. Captain W replied, "Right now I think I could follow those instructions but I do have some reservations. I still in my mind believe that a 'no' means she does not consent."

During a hearing conducted pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), defense counsel, out of the presence of other court members, asked CPT W to clarify his earlier answers. Defense counsel asked CPT W if he thought the consent instruction was unfair. Captain W replied: "No, I don't. I basically can agree with what the Judge stated. Basically what I was telling you was [that] my perception of rape or initial perception of rape before being [instructed] by the judge was [that] a 'no' would constitute in my mind rape but with the additional instruction given, I feel that I can render an unbiased opinion or decision." Defense counsel asked, "Well, let me ask you in your own mind, do you still believe that a 'no' is sufficient?" Captain W answered, "I've had that perception for quite some time. In my own mind, yes, I honestly believe that a 'no' means just that, 'no', she does not consent, but I have to go by what the law states as well. If the law states that there has to be some degree of force and if that is not presented, then I have no other choice but to agree with the law."

Appellant challenged CPT W for cause maintaining that CPT W, given his responses, had some reservations concerning the legal definition of rape. The military judge denied appellant's challenge, finding that, although CPT W had misunderstood the law concerning the lack of consent element in a rape charge, CPT W's subsequent responses indicated he could follow the court's instructions. We agree.

▮▮ Challenges for cause are limited to instances where threats to a court's member's impartiality are "actual" or "implied." *United States v. Klingensmith,* 17 M.J. 814, 816 note (ACMR 1984). As the Court noted in *Klingensmith:*

> "Actual" bias may be shown by express admission or by proof of specific facts which point so sharply to bias in a member that his own denials or bias must be discounted.... "[I]mplied bias" ... mean[s] bias as a matter of law and is typically reserved for members who have a special relationship, be it familial, financial, or situational, with any of the parties involved in a case.

*Id.* (citation omitted). When a challenge for cause is denied, the proper test for evaluating the propriety of the denial is whether the prospective court member is "mentally free to render an impartial finding and sentence based on the law and the evidence." *United States v. Parker,* 19 C.M.R. 400, 410–11 (CMA 1955). *See also United States v. McGowan,* 7 M.J. 205 (CMA 1979) (test is whether the challenged member's attitude will yield to the evidence and the instruction of the military judge). In reviewing the military judge's determination that CPT W was qualified to serve as a court member, we are also mindful that the judge "has reasonable discretion to determine controversies of fact." *United States v. Harris,* 13 M.J. 288, 290 (CMA 1982). *Cf. United States v. Tippit,* 9 M.J. 106, 108 (CMA 1980) (unless it is apparent the court member has a closed mind about the case he is to try, denial by the military judge of a challenge for cause should not be reversed).

Applying the foregoing principles to this case, we find that CPT W's responses did not evince an inelastic attitude concerning the standard of proof for the offense of rape. Captain W's answers merely indicated that he was unversed in the legal elements of the crime. After the military judge explained carefully and in detail the elements of proof, CPT W stated he could follow the instructions. During the subsequent *voir dire* by defense counsel, CPT W consistently affirmed his willingness to follow and apply the law as stated by the military judge. Captain W's responses were "delivered in a manner indicative of their truthfulness" and demonstrated that he laboredunder neither actual nor implied bias. *See United States v. Lane,* 18 M.J. 586, 587 (ACMR 1984) (initial expression of bias may be overcome if member unequivocally states he will adjudicate case on basis of the evidence and the judge's instructions.) Captain W was mentally free to render an impartial decision concerning the findings and the sentence. The military judge properly denied appellant's challenge for cause.

## II. The Challenge Against 2LT B

▮ Appellant also contends that the military judge erred by denying the defense's challenge for cause against 2LT B because 2LT B, the victim of an unrelated prior attempted rape, is presumed to be biased. We disagree.

Second Lieutenant B related that an unknown assailant had tried to rape her two years earlier. She sustained bruises during the assault. The assailant had been caught and tried. Although 2LT B had been out of the country during the trial, she believed the assailant pleaded guilty. When the military judge asked 2LT B whether her personal experience would affect her ability to try appellant fairly, she answered, "No, sir, I don't think so." When defense counsel questioned 2LT B, the following colloquy occurred:

Defense Counsel: [D]id you harbor any sort of particular anger towards the individual who had done this?

2LT B: For a time, yes, sir.

Defense Counsel: Would you say you still had somewhat of a residual anger against people who have committed that crime.

2LT B: Against this particular person, yes, but from my point of view, you know, he was apprehended and he was tried and so, you know, for [sic] that point of view, I've got no qualms one way or the other. I think I can judge the man fairly.

. . . .

2LT B: The only problem that I had was the anger that I felt towards this particular individual. I thought it was a misuse of force.

Defense Counsel: Did you change your living habits because of this, such as not going out alone or anything like that?

2LT B: I'm a little bit more cautious about going out by myself but that's about the extent of it. For awhile, yes, I was very angry—I don't think that would affect my ability to be a trial member here.

Second Lieutenant B also indicated that her assailant received a lenient sentence and was placed under the protective custody of his lawyer so he could finish college. She stated:

I felt, at the time from my point of anger, I felt that he should have serve at least a couple of—a little while in jail but that was, you know, there's nothing I can do about it now.

The military judge denied the defense's challenge for cause against 2LT B. Explaining his ruling, the military judge stated, "2LT B indicates that she has long, a long time ago had gotten over any anger that she had which was directed at the perpetrator of the attempted rape in her case and she's capable of sitting as a fair and impartial member." We find the military judge's ruling was correct.

The fact that 2LT B had been the victim of an attempted rape does not, in and of itself, indicate that she could not render a fair verdict in appellant's case. We decline to presume bias simply because a court member has been the victim of an offense similar to those brought against an accused. *Cf. United States v. Porter,* 17 M.J. 377 (CMA 1984) (victim of recent larceny not automatically disqualified from serving as a court member in a robbery case); *United States v. Klingensmith,* 17 M.J. at 816 (mere fact that a court member's wife had been victim of harassing phone calls did not support presumption that member would be biased against the accused who had been convicted of conveying false information by telephone); *United States v. Yarborough,* 14 M.J. 968 (ACMR 1982), (husband of an assault victim was qualified to serve as a court member in a trial for unlawful entry and indecent assault) *aff'd,* 18 M.J. 452 (CMA 1984). The relevant inquiry is whether 2LT B's responses during *voir dire* indicate she could not fairly and impartially discharge her obligations as a court member.

In this case 2LT B's statements conclusively negate any concern that her impartiality may have been affected by the attempted rape which she experienced two years prior to appellant's trial. Second Lieutenant B unequivocally stated that the offense she experienced would not affect her ability to impartially sit on appellant's trial. Admitting that she might harbor some residual anger against the particular person who attempted to rape her, 2LT B stated she had no anger against appellant and could judge him fairly. Second Lieutenant B convincingly and positively affirmed that, if she had any reservations about appellant's guilt, she would vote that he was not guilty. The *voir dire* of 2LT B was sufficient to test her impartiality and assure that any existing prejudice would be discovered. *See United States v. Klingensmith,* 17 M.J. at 816. Since 2LT B's responses indicated she was capable of sitting as a fair and impartial court member, the military judge did not abuse his discretion in denying appellant's challenge for cause against 2LT B.

We have considered the remaining assignments of error raised by appellant, including the contention that his sentence is

too severe, and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge SUTER and Senior Judge YAWN concur.